UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DR. DOUGLASS SCHOTTENSTEIN, M.D., THOMPSON
REAL ESTATE, LLC, and SCHOTTENSTEIN PAIN AND            Index No.: 01197/2022 (VSB)
NEURO, PLLC D/B/A NY SPINE MEDICINE,

                Plaintiffs,                                **VERIFIED ANSWER**

    -against-

DEREK LEE AND PEARL CHAN,

                Defendants.
------------------------------------------------------------------------X

**DEFENDANTS' ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendants DEREK LEE and PEARL CHAN, by their attorney(s), THE LAW OFFICE OF JEFFERY CHABROWE, P.C., submit the following Answer, Affirmative Defenses, and Counterclaims to Plaintiffs Dr. Douglass Schottenstein, et al.'s Complaint as follows:

1. Deny knowledge or information sufficient to form a belief with respect to the truth of the allegations set forth in paragraph(s) 2-3, 13-14, 19, 26-28, 33-44, 51, 64, 69, 71-76, 79, 134, 140-141, 143.

2. Deny each allegation set forth in paragraph(s) 1, 5, 17, 20, 21, 23-25, 29, 31-32, 45-50, 52-61, 63, 65-68, 70, 77-78, 80-87, 98-99, 104-116, 120-121, 126, 128-132, 135-138, 142, 144, 146-148, 150-152, 154-159, 161-164.

3. Deny each allegation set forth in paragraph(s) 4, 8, 15-16, and 18, except that Dr, Schottenstein employed Chan as an office manager and Lee as a medical assistant among other roles, and that both reside in San Antonio, Texas.

4. Deny each allegation set forth is paragraph(s) 7, 9-12, 62, 89-97, 100-103, 117-119, 123-125, as the same are conclusory and evidentiary and present questions of law and fact which should be reserved for decision at the time of trial.

5. Deny knowledge or information sufficient to form a belief with respect to the truth of the allegations set forth in paragraph 6, except deny Chan poisoned anyone.

6. Deny knowledge or information sufficient to form a belief with respect to the truth of the allegations set forth in paragraph(s) 22 and 30, except that Schottenstein directed Chan and Lee to engage in various financial transactions for him as part of their employment.

7. Deny each allegation set forth in paragraph(s) 88, 122, 127, 133, 139, 145, 149, 153, and 160, except as otherwise pleaded herein.

**AFFIRMATIVE DEFENSES**

8. The plaintiffs' claims fail to state a cause of action upon which relief may be granted.

9. Plaintiffs' culpable conduct caused or contributed, in whole or in part, to their injuries and/or damages.

10. The claims are barred, in whole or in part, by Plaintiffs' inequitable conduct and the doctrine of unclean hands.

11. The Complaint fails to identify with any particularity or specificity the factual allegations to which each of its purported claims or causes of action purport to relate, and the Complaint fails to state justifiable claims against the Defendants.

12. No fraud by the Defendants can be demonstrated by Plaintiffs, nor are Plaintiffs' fraud allegations adequately pleaded.

13. No RICO violation can be demonstrated by Plaintiffs, nor are Plaintiffs' RICO allegations adequately pleaded.

14. The defendants have acted reasonably and in good faith at all times, complied with all applicable laws, regulations and standards, and without any intention, knowledge, scienter, malice or comparable state of mind to cause injury or damage to the plaintiffs.

15. Any injuries or damages claimed were caused, in whole or in part, by the negligence or other culpable conduct of third parties over which the answering defendants had no control or right to exercise such control.

16. Plaintiffs' causes of action are barred in whole or in part because one or more of the claims were not filed within the applicable statutes of limitations and/or administrative filling periods.

17. Plaintiffs' claims are barred by the equitable doctrines of waiver and estoppel.

18. Plaintiffs engaged in a pattern and practice of making negligent and fraudulent representations.
19. Plaintiffs gave authority to defendants, whether express or implied, to take actions alleged as wrongful in the Complaint.
20. Plaintiffs are barred, in whole or in part, by principles of comparative negligence.
21. The claims are barred, in whole or in part, as a result of Plaintiffs' failure to mitigate its damages.
22. Plaintiffs are not entitled to any of their requested relief against the Defendants whatsoever.
23. The alleged damages alleged by Plaintiffs were not caused by the Defendants and were the direct, proximate cause of other, intervening, and/or superseding causes, including but not limited to Plaintiffs' own acts or omissions.
24. Plaintiffs commenced this action solely for the purpose of harassment, delay and malicious injury to the defendants and Plaintiffs' action lacks evidentiary support.
25. Plaintiff's claims and injuries amount to fraud.
26. Plaintiff's claims and injuries amount to misrepresentation.
27. Defendants hereby give notice that they intend to rely upon such other affirmative defenses as may be become apparent during the course of discovery and thus reserve the right to amend this answer to assert any such defenses, cross-claims, counterclaims and third-party claims in this action when and if they become appropriate. The Defendants adopt by reference any and all applicable defenses pied, whether presently stated or unstated, by any other defendant to the same extent that the Defendants directly may assert such defense.

## NATURE OF COUNTERCLAIMS

28. The counterclaims constitute causes of action by the defendants against Dr. Douglas Schottenstein, M.D., and Schottenstein Pain and Neuro, PLLC D/B/A NY Spine Medicine for compensatory and punitive damages by reason of the plaintiffs': (a) violations of New York City Human Rights Law ("NYCHRL"), N.Y. Admin. L. §§ 8-101 et seq. and (b) quantum meruit/unjust enrichment relative to unpaid wages and unreimbursed expenses.

## JURISDICTION AND VENUE

29. The Court has jurisdiction pursuant to 28 U.S.C. §1332. The plaintiffs are citizens of New York state and Lee and Chan are citizens of Texas.

30. The amount in controversy exceeds $75,000.00

31. Venue is proper in this District because the plaintiffs reside in the District, and a substantial part of the events and occurrences underlying this litigation occurred within this District.

## FACTS IN SUPPORT OF COUNTERCLAIMS

### Dr. Douglass Schottenstein, M.D.

32. Upon information and belief, Plaintiff Dr. Douglas Schottenstein is the owner of Schottenstein Pain and Neuro, PLLC d/b/a NY Spine Medicine, located in Manhattan, NY.

33. As set forth herein, through the course of the Defendants' employment, Schottenstein regularly used elicit drugs and forced the defendants to use and/or procure them for him as a condition of their employment.

34. Schottenstein likewise subjected the defendants to drug-fueled rages that manifested in racist and sexist abuse, assaults, and other outrageous and illegal conduct.

35. Schottenstein has been named as a defendant in at least two medical malpractice actions—*see* Shearer v. Schottenstein, M.D., et al., 805138/2013 (New York County Supreme Court) and Harrison v. Schottenstein, M.D., 708951/2013 (Queens Supreme Court).

36. Notably, the Harrison case resulted in a default judgment against Schottenstein, in which the Hon. Peter J. O'Donoghue remarked, "Throughout this litigation the conduct of defendant Douglas Schottenstein, M.D. has been willful and contumacious. The Court will not condone such conduct.) (See Harrison v. Schottenstein, M.D., 708951/2013 (Queens Supreme Court) (DCKT. 90)).

37. Similarly, in lawsuit brought by Schottenstein sounding in defamation against a doctor who questioned the soundness of his methods (see Douglas Schottenstein, M.D. v. Warren Silverman, M.D., 158186/2013 (New York County Supreme Court), Schottenstein's case was dismissed after Schottenstein declined to respond to the defendant's dismissal motion. (See Douglas Schottenstein, M.D. v. Warren Silverman, M.D., 158186/2013 (New York County Supreme Court) (DCKT. 81)).

38. Patient review websites have also contained disturbing insights about Schottenstein; a 2019 "Vitals" review warned potential patients to "Stay Away": "Do not see him, especially if you are a woman. First time I saw him he made inappropriate comments

about my body and handed me a Pilates DVD as my 'treatment'. Treated his female staff very condescendingly. He appeared to be under the influence. He is a mess…" (see https://www.vitals.com/doctors/Dr_Douglas_Schottenstein/reviews).

39. A 2020 review of Schottenstein on "Yelp" stated, "As the practice grew, things started to fall apart piece by piece including his own mental health. He is brash, rude, incompetent, no longer compassionate and frankly just doesn't give a shit about his patients…"; the writer also found it "strange" that Schottenstein only seemed to hire "young Asian girls" (see https://www.yelp.com/biz/ny-spine-medicine-new-york).

40. Accordingly, it is clear that the instant matter arises against a troubling backdrop of vexatious and frivolous litigation, and racist, sexist, and erratic conduct on the part of Dr. Schottenstein.

**Pearl Chan**

41. In late 2012, Schottenstein hired Pearl Chan, a Texas native of Chinese descent, as a medical assistant.

42. At the time she was hired, 21-year-old Pearl had just completed her B.S. in Biology with a minor in Chemistry from Texas Tech University, and newly moved to New York City.

43. Pearl intended to apply for medical school and was thrilled to be hired in her first post-college job by a New York City doctor.

44. Unfortunately, Pearl would come to learn that her employment was contingent on her tolerating a plethora of traumatizing and illegal conduct on the part of Dr. Schottenstein.

45. Early in Pearl's tenure, Schottenstein made it known that he preferred hiring Asians, and particularly young Asian girls, because they were "submissive" and he found them attractive.

46. Schottenstein began requiring Pearl to attend lavish dinners and Broadway shows with him, and pressuring her to smoke marijuana with him daily, which prior to meeting Schottenstein, she had never done.

47. As time went on, Schottenstein escalated his pressure, forcing Pearl to take hallucinogenic mushrooms and MDMA with him—if Pearl resisted, Schottenstein would explode with rage, making her work life impossible unless she complied with his demands.

48. Schottenstein would also require Pearl to be always reachable, which meant never taking the subway, and spending substantial non-business hours keeping him company at his home and other locations.

49. In early 2013, Schottenstein made Pearl an office manager, raising her salary substantially, yet continuing to require her to be available at all hours, and regularly subjecting her to his considerable rages.

50. On one occasion, Schottenstein became so enraged by something that had occurred in the office, he threw a full 20 oz. Coke bottle at the heads of Pearl and another manager, as well smashing a lamp and television remote.

51. Through the course of her employment, Schottenstein would undress in front of Pearl, leer at her, and make sexually suggestive comments.

52. On at least one occasion, Pearl became drowsy from the drugs Schottenstein forced her to take, and lifted Pearl's clothing without her consent, taking pictures of her exposed body.

53. Schottenstein's abuses were unwanted, unwelcome, and continued for the duration of Pearl's employment, which concluded in November of 2020.

54. Making matters worse, Schottenstein had promised to pay Pearl $550,000.00 in 2019, but only paid her $87,000.00.

55. In 2020, Schottenstein paid Pearl an additional $150,000.00 for 2019, but still owed her $313,00.00 for that year.

56. For 2020, Schottenstein had promised to pay Pearl $700,000.00, but he paid her nothing.

57. Schottenstein also declined to reimburse Pearl for thousands of dollars in business-related expenses which are still being compiled but appear well in excess of $10,000.00.

58. In sum, Schottenstein threatened the removal of Pearl's employment and substantial salary if she did not endure his racist and sexist abuse, but for the last two years of her employment, he declined to pay her anyway.

### Derek Lee

59. In 2015, Derek Lee, who like Pearl is an American of Chinese descent, was working as a pharmacy technician when Schottenstein hired him as a medical assistant.

60. Like Pearl, Derrek was subject to Schottenstein's abuses throughout his tenure with him.

61. Although Derek was raised in America and speaks perfect English, Schottenstein would rage if he thought Derek had not adequately performed a given task, saying words to the effect of, "Don't you understand English?" and calling him "retard" and "idiot."

62. In March of 2016 when Schottenstein took issue with the way Derek was positioning a camera, he grabbed Derek by the neck and threw him against the wall.

63. On another occasion, when Derek had food delivered to Schottenstein's home, Schottenstein said it was cold, and threw the food at him.

64. As with Pearl, Derek was expected to be available to Schottenstein at all hours of the day, and his employment was contingent on performing tasks well beyond that of a medical assistant; he became a co-office manager, property manager, and handyman, among other things.

65. Schottenstein also required Derek to act as his agent in illicit drug transactions, involving thousands of dollars in cash in exchange for weed, weed vials, weed pills, weed gummies, mushrooms, and chocolate mushrooms.

66. To the extent Derek declined to carry out these outrageous, dangerous, and illegal tasks, Derek would risk termination and be subjected to Schottenstein's rages and insults, with Schottenstein's go to racist line being "Don't you speak English?"

67. In 2017, shortly after Schottenstein's dog Sam died, Schottenstein was so distraught that his ability to work in the office greatly decreased; consequently, Derek was made a co-office manager with Pearl, and received a pay raise.

68. Derek was not paid his promised salary in 2020; specifically, in 2020, Schottenstein promised Derek $250,000.00, but only paid him $70,000.00, $180,00.00 short of what was owed.

69. Once again, as with Pearl, Schottenstein repeatedly threatened the removal of Derek's employment and/or salary if he did not endure Schottenstein's racist abuses—yet for the last year of his employment, Schottenstein declined to pay him anyway.

### Derek Lee and Pearl Chan

70. In 2017, shortly after the death of Schottenstein's dog and promotion of Derek, Pearl and Derek began to date.

71. They kept the relationship a secret because Schottenstein appeared to view Pearl as personal property—and as such, her involvement with Derek could be deeply problematic.

72. In 2019, Pearl became pregnant with Derek's baby, and wore baggy clothes to hide it from Schottenstein.

73. Notwithstanding, Schottenstein appeared to be aware that Pearl was pregnant and growing wise to the couple's relationship.

74. Schottenstein would say to Derek in sum and substance, "Are you two dating? If you are, I can understand since you're both Chinese. But you should know she's a bitch."

75. Schottenstein would also make comments in the office to the effect that "the Chinese know how to repopulate," and "of course the Asians in the office date, it's in their blood."

76. During this time, Schottenstein would move Pearl's shirts up, without her consent, and touch her stomach to see if she was pregnant.

77. Schottenstein also began telling Pearl he could help take care of the "issue" and push her down a flight of stairs.

78. Schottenstein also suggested that he and Pearl could have a baby through in vitro fertilization so he could have an heir without having to actually be with someone or be married—and suggested that the two could raise the baby as "co-parents."

79. This conduct was deeply unwelcome, deeply traumatic, and deeply frightening.

80. After Pearl had her baby, Schottenstein would make Pearl work later and later at night, sometimes not letting her go home until shortly before work the next day.

81. Pearl would often not spend meaningful time with her baby for days during this period.

82. Pearl became pregnant with the couple's second child in April of 2020.

83. Derek and Pearl began to fear not only for their own safety, but for that of their emerging family, and decided to get as far away from Schottenstein as possible.

84. The couple moved to Texas, where Pearl has a brother who is a police officer, and they could feel better protected.

85. The trauma Schottenstein inflicted on Derek and Pearl continues to this day.

## AS AND FOR THE FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

**(New York City Human Rights Law ("NYCHRL")**
**N.Y. Admin. L. §§ 8-101** *et seq.*
**Gender Discrimination, Sexual Harassment, Hostile Work Environment, Discrimination on the Basis of Race, Color, and National Origin, and Constructive Discharge**

86. Defendants/Counterclaimants incorporate by reference and reallege each and every allegation stated in Paragraphs 32 through 85.

87. The NYCHRL prohibits employers from discriminating against an employee in the terms and conditions of his employment on the basis of race, color and national origin.

88. The NYCHRL prohibits employers from discriminating against an employee in the terms and conditions of his employment by creating and maintaining a sexually hostile work environment by engaging in sexual harassment.

89. In violation of the NYCHRL, Plaintiffs discriminated against the defendants/counterclaimants on the basis of gender, race, color and national origin, by subjecting them to sexual harassment and creating a hostile work environment, ultimately making it impossible for them to continue working for Plaintiffs.

90. The hostile work environment created by the Defendants was severe, pervasive, and part of a pattern or practice of illegal and discriminatory harassment by the plaintiffs.

91. Defendants/Counterclaimants were treated less well than other employees because of their sex, race, color and national origin.

92. The hostile working environment altered the Plaintiffs' conditions of employment by creating an abusive, physically threatening, humiliating, and intolerable working environment.

93. When Defendants/Counterclaimants resisted the harassment to which they were subjected, the plaintiffs took no action to stop their unwelcome conduct.

94. The plaintiffs had the power to hire, fire, and alter the terms and conditions of the defendants'/counterclaimants' employment.

95. As a direct and proximate result of Defendants' actions, the defendants/counterclaimants have been substantially injured.

96. By reason of the illegal and discriminatory conduct perpetrated by the plaintiffs, the defendants/counterclaimants are entitled to damages available to them under New York City Human Rights Law.

## AS AND FOR THE SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### -Unjust Enrichment/Quantum Meruit-

97. Defendants/Counterclaimants incorporate by reference and reallege each and every allegation stated in Paragraphs 32 through 96.

98. As set forth herein, Defendants/Counterclaimants have expended numerous hours and monies in performing work for the plaintiffs.

99. As a result, Plaintiffs have received an enrichment, and Defendants/Counterclaimants have received an impoverishment.

100. There exists a connection between the enrichment and the impoverishment.

101. There is an absence of a justification for the enrichment and impoverishment.

102. As such, Defendants/Counterclaimants are entitled to recovery under the doctrine of unjust enrichment/quantum meruit.

## DEMAND FOR PUNITIVE DAMAGES

103. The actions of the plaintiffs described herein were extreme and outrageous and shock the conscience of a reasonable person.  Consequently, an award of punitive damages is appropriate to punish the plaintiffs for their cruel and uncivilized conduct.

## **DEMAND FOR TRIAL BY JURY**

104. The defendants/counterclaimants hereby demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, the defendants/counterclaimants request that this Honorable Court grant them the following relief:

A. Dismissal of the Complaint;

B. A judgment in favor of Defendants/Counterclaimants against Plaintiffs for compensatory damages and punitive damages in an amount to be determined by a properly charged jury, together with costs, attorney's fees, lost wages, interest, and disbursements as and when permitted by law;

C. Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York
July 2, 2022

Respectfully Submitted By:

_____/s_____
Jeffrey Chabrowe, Esq.
 Law Office of Jeffery Chabrowe, P.C.
Attorney(s) for the Defendants
521 5th Avenue, 17th FL
New York, New York 10017
T: (917) 529-3921
E: Jeff@chabrowe.com

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

The undersigned, being an attorney duly admitted to practice before the Court of the State of New York and fully aware of the penalties of perjury, hereby affirms as follows:

1. Affirmant is associated with the law firm of the Law Office of Jeffery Chabrowe, P.C., in the within action and is fully familiar with the facts and circumstances involved in this matter from reviewing the file regarding the same maintained in the offices of the said law firm.

2. Affirmant has read the foregoing Verified Answer with Counterclaims, knows the contents thereof, and the same are true to affirmant's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters affirmant believes them to be true.

3. Affirmant further states that the reason this affirmation is made by the undersigned and not by Defendants is because the averments contained therein are based solely on the knowledge of the affirmant, and Defendants are not within the county where Affiant maintains his office.

4. The grounds of Affirmant's belief as to all matters not stated to be affirmant's knowledge are investigative and other information contained in the file of the said law firm.

Dated: New York, New York
       July 2, 2022

_____/s_____
Jeffrey Chabrowe, Esq.
The Law Office of Jeffery Chabrowe, P.C.
Attorney(s) for the Defendants

521 5th Avenue, 17th FL
New York, New York 10017
T: (917) 529-3921
E: Jeff@chabrowe.com

# AFFIRMATION OF SERVICE

STATE OF NEW YORK      )
                                           ) ss:
COUNTY OF NEW YORK )

      Jeffrey Chabrowe, an attorney duly licensed to practice law in the State of New York affirms under penalty of perjury and says: I am not a party to this action, I am over eighteen (18) years of age, and I am a resident of the State of New York. On July 2, 2022, I served the within **VERIFIED ANSWER** electronic service and/or depositing a true copy in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name below, and/or by e-service to:

Schlanger Law Group
Daniel A. Schlanger
Attorney(s) for Plaintiffs
80 Broad Street. Ste. 1301,
New York, NY 10004

Dated: New York, New York
      July 2, 2022

                                        /s_____
                                        Jeffrey Chabrowe, Esq.
                                        The Law Office of Jeffrey Chabrowe, P.C.
                                        Attorney(s) for the Defendants
                                        521 5th Avenue, 17th FL
                                        New York, New York 10017
                                        T: (917) 529-3921
                                        E: Jeff@chabrowe.com