# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DR. DOUGLAS SCHOTTENSTEIN, M.D.,
THOMPSON REAL ESTATE, LLC and
SCHOTTENSTEIN PAIN AND NEURO,
PLLC D/B/A NY SPINE MEDICINE,

      Plaintiffs

    against-

DEREK LEE, PEARL CHAN, KONG H.
CHAN, AND JOHN AND JANE DOES 1-10,

      Defendants.

Civil Action No.:  22-cv-01197 (DLC)

---

### PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AND DAMAGES ON FOURTH CAUSE OF ACTION (CONVERSION) OF THE AMENDED COMPLAINT AND OTHER RELIEF

Cory H. Morris, Esq.  (CM5225)
The Law Offices of Cory H. Morris
863 Islip Avenue
Central Islip, New York 11722
(631) 450-2515

Donner Law
708 Highway 35 South
Neptune, New Jersey 07753
(732) 578-8530

Richard Bruce Rosenthal, Esq.
545 E. Jericho Turnpike
Huntington Station, New York 11746
*Co-Counsel for Plaintiffs*

On the brief:
Jeffery A. Donner, Esq.
Cory H. Morris, Esq.
Richard Bruce Rosenthal, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...........................................................................................1

ARGUMENT ...............................................................................................................4

   I.   THE BALLA REPORT PROPERLY CONSIDERS THE FACTUAL INFORMATION UPON WHICH FORENSIC ACCOUNTANT ROUTINELY RELY ......................................4

   II.   DEFENDANT'S WRONGFUL ACTIVITIES OCCURRED WELL WITHIN THE APPLICABLE STATUTE OF LIMITATIONS.................................................................7

   III.   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IS SO REPLETE WITH INCONSISTENCIES AND IMPROBABILITIES THAT NO REASONABLE FACTFINDER CAN UNDERTAKE THE SUSPENSION OF DISBELIEF TO CREDIT THEIR ALLEGATIONS; RECOGNIZING THIS PLAINTIFFS' MOTION SHOULD BE GRANTED. .........................9

   IV.   PLAINTIFFS HAVE PLED SUFFICIENT FACTS REGARDING THE WRONGFUL ACTS OF CHAN AND LEE TO APPRISE DEFENDANTS OF THEIR FAITHLESS SERVANT CLAIM EVEN THOUGH IT WAS NOT EXPRESSLY STATED IN THE COMPLAINT. ......13

   V.   BIFURCATION RESULTING IN SEPARATE TRIALS FOR PLAINTIFF'S AFFIRMATIVE CLAIMS AND DEFENDANTS' COUNTERCLAIM IS MERITED IN THIS CASE TO AVOID PREJUDICING THE JURY. DEFENDANTS' OBJECTIONS TO BIFURCATION ARE MERITLESS ..............................................................................15

CONCLUSION ..........................................................................................................16

**TABLE OF AUTHORITIES**

**Cases**

*Alvarez v. Hill*, 518 F.3d 1152, 1157-59 (9th Cir. 2008) ............................................16

*Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) .........................17

*Ashcroft v. Iqbal*, 556 U. S. 662 (2009)........................................................................15

*Aziz Zarif Shabazz v. Pico*, supra at 468......................................................................13

*Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ..............16

*Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 569-70 (2007) ...................................15

*Berman v Goldsmith*, 141 A.D.2d 487, 529 N.Y.S.2d 115 (2d Dept. 1988) .................9

*Blue v. Koren*, 72 F.3d 1075, 1082 (2d Cir. 1995) ......................................................13

*Braman v Westaway*, 60 N.Y.S.2d 190, 1945 N.Y. Misc. LEXIS 2664 (N.Y. Sup. Ct. 1945), modified, 59 N.Y.S.2d 509, 1946 N.Y. Misc. LEXIS 1772 (N.Y. Sup. Ct. 1946)....................8

*Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016)....................16

*Cecala v Title Guarantee Co.*, 45 Misc. 2d 986, 258 N.Y.S.2d 464, 1965 N.Y. Misc. LEXIS 2045 (N.Y. Sup. Ct. 1965). .............................................................................8

*D'Amico v. City of N.Y.*, 132  F.3d, 145, 149 (2d Cir. 1998) .......................................11

*Decker v Decker*, 108 N.Y. 128, 15 N.E. 307, 108 N.Y. (N.Y.S.) 128, 13 N.Y. St. 131, 1888 N.Y. LEXIS 563 (N.Y. 1888) .................................................................................8

*Elec. Const. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 622-23 (9th Cir. 1985) .....15

*Gates v Andrews*, 37 N.Y. 657, 37 N.Y. (N.Y.S.) 657, 1868 N.Y. LEXIS 37 (N.Y. 1868)..........8

*Hebron v Long*, 15 N.Y.S.2d 456, 1939 N.Y. Misc. LEXIS 2410 (N.Y. App. Term 1939) ..........9

*Hendricks v. Centanni*, 1996 U.S. Dist. LEXIS 1662, No. 92 Civ. 5353 (SAS), 1996 WL 67721, at *4 (S.D.N.Y. Feb. 16, 1996)................................................................................14

*Jeffreys v. City of New York*, 426 F. 3d 549, 553-554 (2d Cir. 2005) .........................11

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ...........................................................15

*Johnson v. City of Shelby, Miss.,* 135 S. Ct. 346, 347 (2014) ........................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986).............................................................................................................................11

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977))...........................................................................................................................13

*New York v Fidelity Trust Co*., 243 A.D. 46, 276 N.Y.S. 341, (App. Div. 1934), LEXIS 5480 (N.Y. App. Div. 1934) ...................................................................................................................9

*OWBR LLC v. Clear Channel Communs., Inc.,* 266 F. Supp. 2d 1214, 2003 U.S. Dist. LEXIS 10630 (D. Haw. 2003)...................................................................................................................5

*Skinner v. Switzer,* 562 U.S. 521, 530 (2011) ..........................................................................15

*Tilstra v. Boumatic LLC*, 791 F. 3d 749 (7th Cir. 2015)................................................................5

*United States v. Arias*, 678 F.2d 1202, 1206 (4th Cir.), *cert. denied,* 459 U.S. 910, 103 S. Ct. 218, 74 L. Ed. 2d 17 (1982) ...............................................................................................................4

*Waldorf v. Shuta*, 142 *F. 3d* 601, 625 (3rd Cir. 1998), *quoting Aloe Coal Co. v. Clark Equip. Co.,* 816 F. 2d 110, 114 (3rd Cir. 1987)..............................................................................................6

**Statutes**

CPLR § 213...................................................................................................................................8

Fed. R. Evid. 703 ........................................................................................................................ 4

Fed.R.Civ.P  8(a)(2)....................................................................................................................15

Fed.R.Civ.P. 8(d)(1).................................................................................................................. 16

Fed. R.Civ.P. 42(b) .............................................................................................................. 19, 20

Fed. R.Civ.P. 56(c) ....................................................................................................................14

**PRELIMINARY STATEMENT**

Plaintiffs' motion for summary judgment should be granted as Defendants fail to raise any issue of material fact precluding this award. In an unconcealed whirlwind of desperation, seeking to escape the wrath of their own thievery, and with the hot breath of retribution breathing down on their necks, Defendants Chan and Lee lash out at everything within their reach except the substantive facts of their own wrongdoing from which there is no way out. In this grotesque effort, they attack the character of Dr. Schottenstein, a leading pain management specialist and neurologist in the country, who is one of only two hundred and fifty (250) practitioners in America that are Board certified in both disciplines, and rated by his peers as the Top Doctor in New York for pain management for the past thirteen years in a row. Turning to his singularly generous financial treatment of them and the trust the doctor placed in them both, Defendants Chan and Lee attempt to turn that kindness into a negative by portraying their salaries and bonuses as a *quid pro quo* for them to undertake "licit and illicit tasks" on Dr. Schottenstein's behalf and, in this process, falsely claiming that Dr. Schottenstein authorized office employees to impersonate him.

The problem, however, for Chan and Lee in this endeavor is that they have nothing with which to document their narrative other than their bald, self-serving statements. Moreover, Chan and Lee conveniently by-pass their problematic activities such as impersonating an attorney, an accountant and others through false electronic mailings (e-mails) and other writings directed to Doctor Schottenstein in order to conceal the harmful steps they routinely and continuously took against him. These steps included placing Dr. Schottenstein's home in foreclosure by diverting the monthly mortgage payment checks while assuring the doctor that the checks were being properly mailed and the mortgagee was in error. Their bad acts also included the deliberate

failure to process the doctor's billing while assuring him all was in order thereby leading to a monumental cash crisis within the medical practice. As Chan and Lee state, their acts were authorized by Dr. Schottenstein, one must question why they went to these lengths to harm him personally and professionally?

The Chan-Lee sagas, however, grow to such phantasmagorical lengths, so peppered with inconsistencies and improbabilities, that no one can undertake the suspension of disbelief needed to credit their allegations, which, as a general rule, have nothing to do with the conversion with which they are charged.

Plaintiffs' forensic expert Keith Balla found and documented seven (7) categories of theft from Plaintiffs engaged in by Chan and Lee totaling over $3.6 million in losses from their conversion. Chan and Lee's response essentially consists of one bald completely unsupported statement, without documentation or objective support of any kind: that these thefts were authorized and the funds taken were somehow owed. These seven categories of theft are as follows:

(1) the unauthorized wires that transferred $748,798 out of the Thompson Account and into their own respective accounts,

(2) the unauthorized American Express card charges totaling in excess of $600,000 for abusive, lavish and outlandish expenditures having absolutely nothing to do with the business purposes for which the cards were provided,

(3) the unauthorized manual cash withdrawals from the Medical Practice Account exceeding $528,000,

(4) the electronic cash withdrawals from the Medical Practice Account via Chase QuickPay and QuickPay with Zelle that exceeded $206,000,

(5) post-termination payroll costs for Lee resulting from wrongly failing to delete him from the system thereby depriving the Medical Practice of over $177,000 in unnecessary costs,

(6) defendants' forgery and absconding with a $118,000 check made out to Dr. Schottenstein that cleared the Iberia Bank Account without the proceeds being deposited into any account owned or controlled by Plaintiffs, and

(7) over $1.255 million in unearned salary and bonuses collected by defendants while they targeted and continued to target the theft of Plaintiffs' assets through bank fraud, wire fraud, identity theft, credit card fraud and manual and electronic withdrawals.

Chan and Lee provide no documentation of any such debt nor any calculation of the amount which they claim was due to them. They provide no authority to support their inference that their thefts can be somehow justified by this outstanding imaginary debt. Defendants, Chan and Lee, meager offerings are clearly not enough to withstand the overwhelming evidence that from 2017 through 2020, Chan and Lee converted over $3.6 million from Plaintiffs.

Chan and Lee neither engaged such an expert nor produced a report – neither can or bothered to challenge Mr. Balla's findings through their own forensic expert. Chan and Lee, instead, attack Mr. Balla on non-substantive points such as the format of his Declaration, which is easily corrected under Local Rule 1.9 through an oral representation in open court, and where the Declaration format is allowed under 28 U.S.C. Section 1746.

Revealing their continuing desperation, these defendants ignore the fact that all the operative portions of Plaintiffs' Motion for Partial Summary Judgment, including the Schottenstein Affidavit with Exhibits, the Balla Declaration and Report, the Memorandum of Law and the Undisputed Statement of Material Facts were filed as Docket 82 on August 18, 2023, only to focus on the unexpected difficulty encountered when certain digitally heavy Exhibits consisting of account statements reviewed by Mr. Balla could not be filed on August 18th because of their digital size, which could not be reduced for filing until 9:06 A.M. and 11:00 A.M the next morning, August 19th.

Despite the fact that the entire basis for Plaintiffs' Motion was filed and served, (the delayed Exhibits merely confirm the records that Mr. Balla reviewed), Chan and Lee baselessly claim without authority that Plaintiffs' Motion should simply be denied.

ARGUMENT

I. **THE BALLA REPORT PROPERLY CONSIDERS THE FACTUAL INFORMATION UPON WHICH FORENSIC ACCOUNTANT ROUTINELY RELY**

An expert may base an opinion on facts or data in the case of which the expert has been made aware or personally observed. If experts in a particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. If, however, the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703, which Defendant's ignore, specifically allows experts, in reaching their opinions, to rely on facts outside the record or not personally observed, but of a kind that experts in the field reasonably rely on in forming opinions. See, *United States v. Arias*, 678 F.2d 1202, 1206 (4th Cir.), *cert. denied*, 459 U.S. 910, 103 S. Ct. 218, 74 L. Ed. 2d 17 (1982).

In *Arias*, error was assigned to admitting the testimony of the prosecution's expert witness., a forensic chemist and ballistics expert employed by the D.E.A., who testified that he compared the quaaludes which were seized from the plane with a sample quaalude pill that he had received from an agent in Colombia. In his opinion, the seized quaaludes had been made by the same machine as the tablet from Colombia, and they could not have been made by any of the legitimate or illicit laboratories in the United States from which the D.E.A. had samples. The Court noted that the D.E.A. had samples from all legitimate laboratories in this country.

The appellants protested that this testimony should not have been admitted because the government failed to establish a chain of custody for the sample sent from Colombia. In effect, they claimed, the expert's testimony was based on hearsay as to the origin of the sample tablet. The court found, however, that under Fed. R. Evid. 703, an expert may base his testimony upon the type of hearsay he would normally rely upon in the course of his work. The sample pill was sent to the expert by a D.E.A. agent in Columbia in a heat-sealed container by diplomatic pouch with the agent's identification thereon. Since D.E.A. forensic scientists rely upon agents in the field to submit samples and to establish their authenticity as was demonstrated by the fact that the pill in question was catalogued and kept for sample use by the D.E.A., the expert's reliance on the agent's report that the control sample was obtained in Colombia did not make his testimony inadmissible because the expert could use the sample pill in forming his opinion.

In the matter at bar, Mr. Balla's reliance on the Bank and credit card statements that he reviewed and the facts that he obtained from Dr. Schottenstein are precisely the materials on which forensic accountant's rely in formulating their opinions. Nevertheless, the breadth of the factual materials upon which experts have been permitted to rely under Fed. R. Evid. 703 should be fully understood and appreciated in order to gauge the routine nature of Mr. Balla's reliance in our case.

In *OWBR LLC v. Clear Channel Communs., Inc.,* 266 F. Supp. 2d 1214, 2003 U.S. Dist. LEXIS 10630 (D. Haw. 2003), the expert was permitted to rely upon statements based upon numerous news reports featuring various Hawaii visitors as well as hotel occupancy rates and convention data in forming an opinion regarding the effect of the incidents on 9-11 upon the tourist industry in Hawaii. In *Tilstra v. Boumatic LLC*, 791 F. 3d 749 (7th Cir. 2015), the court held that in calculating damages, the expert forensic accountant was not required to independently verify all

the facts on which he relied, since he could consider financial statements prepared by outside accountants because such reliance was an accepted practice in his profession.

In light of the foregoing permissible flexibility under Fed. R. Evid. 703, the factual reliance by Mr. Balla on the Bank and credit card statements that he reviewed can be regarded as routine. Moreover, Chan and Lee ignored their opportunity to engage a forensic accountant of their own to rebut Mr. Balla's findings presumably because there was no possibility of challenging Mr. Balla's core findings and expertise. The fact that Defendants failed to avail themselves of this opportunity leaves the Balla findings uncontroverted.

Contrary to Defendants' unanalyzed and unsupported contention, Mr. Balla's Report and findings do not pose a risk of undue prejudice, confusion of the issues, or misleading the jury. Rather, Mr. Balla's work will assist the factfinder by finding and calculating the extent of the conversion activity by Defendants. Mr. Balla possesses the education and experience in a known and recognized expertise that the fact finder does not have. He has applied the tenets of his expertise to the facts in this manner to reach his findings and conclusion. In that sense, Mr. Balla constitutes the role model of an expert:

This ability of the expert to be of assistance to the trier of fact is comprised of three essential criteria:

•       First, in order to possess "specialized knowledge" in the areas to which the expert's opinion is directed, "at a minimum, a proffered expert witness…must possess skill or knowledge greater than the average layman." *Waldorf v. Shuta*, 142 *F. 3d* 601, 625 (3rd Cir. 1998), *quoting Aloe Coal Co. v. Clark Equip. Co.,* 816 F. 2d 110, 114 (3rd Cir. 1987).

•       Second, in order to "assist the trier of fact," the knowledge must be based on some reliable methodology, rather than on subjective belief or unsupported speculation. *In re Paoli R.R. Yard*,

at 742; *Kumho Tire Co. v. Carmichael*, *supra.* at 153-155, where the Court found that the district court did not abuse its discretion in excluding plaintiff's tire failure expert because his method of analysis based upon visual inspection data was unreliable.

• Third, there must be "a connection" or "fit" between the proffered opinion and the disputed issues in the case, and that connection must be based on valid reasoning. *In re Paoli R.R. Yard* at 742-743.

Mr. Balla meets all three of the foregoing criteria thus his testimony is not only admissible but was not contested by Defendants nevertheless an expert for the defense.

## II. DEFENDANT'S WRONGFUL ACTIVITIES OCCURRED WELL WITHIN THE APPLICABLE STATUTE OF LIMITATIONS.

In New York, the statute of limitations for conversion does not start to run until the plaintiff has knowledge of the conversion and has made a claim. Where, however, fraudulent conduct is involved, as in our case, the applicable statute of limitations period is six (6) years. *See*, CPLR § 213; *Cecala v Title Guarantee Co.*, 45 Misc. 2d 986, 258 N.Y.S.2d 464, 1965 N.Y. Misc. LEXIS 2045 (N.Y. Sup. Ct. 1965). Where an action is based upon fraud the limitation period begins to run from the date the fraud is discovered under the provisions of subdivision (c) of this Section, and the six-year limitation period provided by ¶ 6 of CPLR § 213 applies. Knowledge of the fraud must be brought home to plaintiff before the statute of limitations commences to run. *Gates v Andrews*, 37 N.Y. 657, 37 N.Y. (N.Y.S.) 657, 1868 N.Y. LEXIS 37 (N.Y. 1868). Action founded on fraud is barred only by the lapse of six years after the discovery of the fraud. *Decker v Decker*, 108 N.Y. 128, 15 N.E. 307, 108 N.Y. (N.Y.S.) 128, 13 N.Y. St. 131, 1888 N.Y. LEXIS 563 (N.Y. 1888).

Since the Complaint in this matter was first filed on February 11, 2022, the six-year statute extends back in time to February 11, 2016, clearly encompassing all of the Defendants' wrongful acts during the period at issue from January 2017 through December 2020.

Moreover, a few caveats are in order. In *Braman v Westaway*, 60 N.Y.S.2d 190, 1945 N.Y. Misc. LEXIS 2664 (N.Y. Sup. Ct. 1945), modified, 59 N.Y.S.2d 509, 1946 N.Y. Misc. LEXIS 1772 (N.Y. Sup. Ct. 1946), the court held that an action against directors for loans made to officers was not barred by the statute of limitations where the wrongful acts in question were "running open mutual accounts," causing the liability of the directors to accrue with the making of each loan. In our case, the conversion activities of Defendants were on-going, persistent and related raising the argument that each wrongful act was merely a continuation of the same offense causing it to grow day by day throughout the period in question. Under this scenario, the statute would not begin to run until Chan's termination in December, 2020 and all of the wrongful acts dating back to January 2017 would be fully encompassed by the Complaint filed in February 2022 even under the three-year statute.

Furthermore, where the possession of the converted assets is originally lawful as contended by Defendants, demand for the return of the converted assets coupled with a refusal is necessary to establish the cause of action, and the period within which an action must be commenced is computed from the time when the demand is made. *See*, *Berman v Goldsmith*, 141 A.D.2d 487, 529 N.Y.S.2d 115 (2d Dept. 1988), where the court held that causes of action for replevin and for recovery of damages for conversion of chattel accrued on the date the chattel was sold to the defendant at sheriff's sale, where plaintiff's right to demand relinquishment of the chattel was complete. Since the filing of the Complaint in our matter in February, 2022 constitutes the demand for the return of the converted assets, which demand has been refused, under this scenario all of

Defendants' wrongful acts in conversion would be encompassed within Plaintiffs' claim. *See*, *also*, *Hebron v Long*, 15 N.Y.S.2d 456, 1939 N.Y. Misc. LEXIS 2410 (N.Y. App. Term 1939), where the court held that in an action for money had and received, the cause of action did not accrue until the plaintiff discovered the facts entitling her to restitution and, since the pleadings do not reveal the date of such discovery, the statute of limitations cannot be urged as a bar. Also, in an action by the City of New York to recover proceeds of pension checks drawn by the City for a retired employee after his death, the action did not arise until after plaintiff's demand for payment. *New York v Fidelity Trust Co*., 243 A.D. 46, 276 N.Y.S. 341, (App. Div. 1934), LEXIS 5480 (N.Y. App. Div. 1934).

In our case, Plaintiffs did not learn of the conversions until early December, 2020 as documented by Dr. Schottenstein's filing of the Police Report (Schottenstein Affidavit at Exhibit 3). In this regard, the Complaint in this matter was filed timely thereby encompassing all of Defendants' wrongful acts.

## III. DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IS SO REPLETE WITH INCONSISTENCIES AND IMPROBABILITIES THAT NO REASONABLE FACTFINDER CAN UNDERTAKE THE SUSPENSION OF DISBELIEF TO CREDIT THEIR ALLEGATIONS; RECOGNIZING THIS PLAINTIFFS' MOTION SHOULD BE GRANTED.

While as a general rule, assessments of credibility and choices between conflicting versions of events are matters for the jury and not for the court on summary judgment, and in that process, the court should not weigh evidence or assess credibility of witnesses, to defeat summary judgment, non-moving parties "must do more than simply show that there is some metaphysical doubt as to the material facts." *Jeffreys v. City of New York*, 426 F. 3d 549, 553-554 (2d Cir. 2005), *also citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986). At the summary judgment stage, a non-moving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* at 554 citing *D'Amico*

*v. City of N.Y.*, 132  F.3d, 145, 149 (2d Cir. 1998). In the rare circumstance where a party relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for that party, and thus whether there are any genuine issues of material, without making some assessment of that party's account of events. *Id*. at 554.

Defendants Lee and Chan assert various unsupported allegations against Dr. Schottenstein's character and conduct, but the allegations relevant to Plaintiffs' Motion are all centered on their undocumented assertion that Dr. Schottenstein authorized their conduct.

In nearly identical Affidavits attached to the Chabrowe Declaration as Exhibits A and C, Chan and Lee make the following assertions:

(i)   In February, 2020 Derek Lee routinely instructed by Dr. Schottenstein to pose as the Dr. accessed the mortgage account using information provided to him by the Dr. through Pearl Chan to transfer funds from that account to pay unidentified salary, reimbursements, costs and other expenses owed to Lee and Chan. This wire transfer emptied the mortgage account and was not sufficient to pay the amounts owed to Lee and Chan.[1]

(ii)  In March, 2020 Derek Lee again accessed Dr. Schottenstein's mortgage account using information provided by the Dr. through Chan and transferred the entire balance of the account to Lee's account at Chase Bank.[2] According to Chan and Lee

---

[1] As documented by Mr. Balla, this wire transfer was in the amount of $429,741.
[2] As documented by Mr. Balla, this wire transfer was in the amount of $319,057 bringing the total amount transferred by wire on these two occasions to $748,798.

the $748,798 in total wire transfers from February and March, 2020 still did not

cover the unidentified and undocumented amount owed to them.

(iii)    They admit that the September 10, 2020 check in the amount of $118,000 drawn

on Dr. Schottenstein's account at Iberia Bank was drawn and negotiated by them

but with the Dr.'s authorization.

(iv)    They admit that all purchases on the medical practice AMEX Card were made by

them with the authorization of Dr. Schottenstein except those made fraudulently by

unnamed third parties without any explanation.[3]

(v)     They state that all cash withdrawals from the medical practice Chase account were

made by them with Dr. Schottenstein's authorization but with many of these

withdrawals used for unidentified drug purchases, kickbacks to other doctors or to

evade reporting.[4]

Including the $177,018 in payroll expenses for Lee incurred by Plaintiff because Chan

deliberately kept Lee on the payroll after he was terminated as of June, 2019, and further including

the $1,255,499 in payroll paid to Chan and Lee during the period from January 1, 2017 through

December 31, 2020 while they were faithless employees, Mr. Balla has calculated that Lee and

Chan received or simply took a total of $3,634,285 during this period. Lee and Chan's explanation

that all of these transfers were authorized and they were also paid $1.255 million in payroll is the

---

[3] Mr. Balla documents that these AMEX charges without business purpose amounted to $600,455.

[4] Mr. Balla has documented withdrawals from this Chase account by Chan and Lee both manually and electronically as totaling $734,514. Lee and Chan's partial explanation that the dollars they withdrew were authorized as earmarked for unidentified and uncalculated drug purchases, doctor kickbacks and to evade reporting makes no sense, whatsoever. Funds deposited into a bank are already reported, the recipients of these kickbacks are not identified and nearly three-quarters of a million dollars simply does not get expended on drug purchases utilizing marijuana recreationally.

stuff of fantasy, not credible, not capable of suspending disbelief and insufficient to avoid Plaintiffs' Motion being granted.

In *Aziz Zarif Shabazz v. Pico*, supra at 468, now Justice Sotomayer. then acting as a District Judge in the Southern District of New York, addressed a 42 U.S.C. Section 1983 civil rights claim where the claim of prison guard retaliation was asserted by plaintiff. In order to assert a claim of retaliation successfully, "a plaintiff must allege that he or she engaged in conduct that was constitutionally protected and that retaliation against the protected conduct was a 'substantial' or 'motivating' factor in the defendants' actions." *Id. citing Blue v. Koren*, 72 F.3d 1075, 1082 (2d Cir. 1995) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)).  Plaintiff therein vaguely asserted that defendants retaliated against him "because of [his] litigation endeavors and because [he] did not voluntarily submit to a strip frisk". Except for this general assertion, plaintiff offered no support for his retaliation claim.

Noting that the plaintiff is required to proffer facts to defeat defendants' motion for summary judgment, not merely rely upon conclusory statements, and that plaintiff must also show by "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that there are factual issues which can only be resolved at trial, Fed. R. Civ. P. 56(c); *Hendricks v. Centanni*, 1996 U.S. Dist. LEXIS 1662, No. 92 Civ. 5353 (SAS), 1996 WL 67721, at *4 (S.D.N.Y. Feb. 16, 1996), the court found that broad and unsubstantiated allegations of retaliation such as those in the instant action will not defeat a motion for summary judgment. In fact, a complaint that alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone. *Id*. Since the plaintiff presented no facts to support his claims of conspiracy and retaliation, the court dismissed the claim.

The learning of *Jeffreys* and *Pico* is directly applicable to our case. Plaintiffs eliminated issues of material fact and legally show their entitlement to judgment as a matter of law. Lee and Chan have simply not provided sufficient documentation and facts to support their bald allegation that their conduct was authorized because Dr. Schottenstein recognized a monetary debt to them within the context of over $3.6 million. On that basis, Plaintiffs' Motion should be granted.

## IV.   PLAINTIFFS HAVE PLED SUFFICIENT FACTS REGARDING THE WRONGFUL ACTS OF CHAN AND LEE TO APPRISE DEFENDANTS OF THEIR FAITHLESS SERVANT CLAIM EVEN THOUGH IT WAS NOT EXPRESSLY STATED IN THE COMPLAINT.

Defendants contest Plaintiffs' assertion of a Faithless Servant claim against them, now sought to be enforced by Plaintiffs under their current Motion, since Defendants state that the failure to set forth the claim expressly in the Complaint has resulted in their surprise, which in turn they assert should bar the claim. Their position is misguided and untenable.

In a Complaint, a plaintiff is only required to plead facts, not legal theories. See *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (Per Curiam) (reversing Fifth Circuit and holding that only facts need to be pled in a complaint, not legal theories). The plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 569-70 (2007); *Ashcroft v. Iqbal*, 556 U. S. 662 (2009), and need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P 8(a)(2). "Each allegation must be simple, concise, and direct. No technical form is required." Fed.R.Civ.P. 8(d)(1).

Of course, although it is common and customary to do so for the convenience of opposing parties and the Court, a plaintiff is not required to include any causes of action in a complaint.  *See*, *Johnson v. City of Shelby, Miss.,* 135 S. Ct. 346, 347 (2014) (although § 1983 not pled, defendants were advised of the factual basis of the claim, and plaintiffs were "required to do

13

no more"; amendment must be allowed to assert § 1983); *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("Skinner's complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."); *Elec. Const. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 622-23 (9th Cir. 1985) ("A party does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit"; promissory estoppel claim should have been allowed "even if not specifically alleged in the complaint"); *Alvarez v. Hill*, 518 F.3d 1152, 1157-59 (9th Cir. 2008) ("it is sufficient that the complaint, alone or supplemented by any subsequent filings before summary judgment, provide the defendant fair notice that the plaintiff is claiming relief under RLUIPA as well as the First Amendment" even if RLUIPA was not pled); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it. [T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."); *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016) ("A complaint need not specify in detail the precise theory giving rise to recovery, and all that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.").

Applying the foregoing, it is clear that the allegations made against Defendants Chan and Lee in the Complaint clearly depict their duplicitous, fraudulent and faithless conduct as employees resulting in over $3.6 million in losses sustained by their employer as a result of their conduct. The assertion of the Faithless Servant claim arising therefrom could come as no surprise, and is available to Plaintiffs to assert at this juncture.

Accordingly, Defendants cannot claim the facts in this case were not adequately pled nevertheless raise a triable issue of fact that would preclude this Honorable Court's award of partial summary judgment to the Plaintiffs.

**V.    BIFURCATION RESULTING IN SEPARATE TRIALS FOR PLAINTIFF'S AFFIRMATIVE CLAIMS AND DEFENDANTS' COUNTERCLAIM IS MERITED IN THIS CASE TO AVOID PREJUDICING THE JURY. DEFENDANTS' OBJECTIONS TO BIFURCATION ARE MERITLESS**

Acknowledging that bifurcation of claims for trial is appropriate to avoid jury prejudice, Defendants contend that bifurcation in this matter will create prejudice to them in that their counterclaims for alleged unpaid wages and violations of New York City Human Rights Law also constitute their defenses to Plaintiffs' claims. In making this assertion, Defendants offer no authority and provide no explanation as to where their counterclaims interface legally with defenses to RICO allegations including Wire Fraud, Racketeering, Credit Card Fraud, Conspiracy, Fraud, Conversion, Tortious Interference, Battery and Infliction of Emotional Distress. Each of these claims will by necessity reveal highly negative and unscrupulous conduct on Defendants' part.

Defendants assert that the subject transactions yielding over $3.6 million in damages to Plaintiffs were authorized as compensation relative to the official and unofficial duties they performed for Dr. Schottenstein, that transferring millions of dollars from Plaintiffs' accounts and running up over $600,000 in credit card charges were normal conduct, and that despite these transactions Dr. Schottenstein still owes them money in the absence of any proof, delineation or accounting. Defendants, still, proffer no definite dollar amount owed to them. The scenario outlined by Defendants within the context of Plaintiffs' claims against them appears to constitute a text book case for bifurcation to avoid unfair jury prejudice for both Plaintiffs and Defendants.

The issue of bifurcation is left to the sound discretion of the trial court. See Fed. R. Civ. P. 42(b); *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999). Pursuant to Rule 42(b), Fed. R. Civ. Pro., a court may, "[f]or convenience, to avoid prejudice, or to expedite and economize [litigation], ... order a separate trial of one or more separate issues ... [or] claims."

Here, Defendants, in their rush to oppose bifurcation appear to be ignoring the significant prejudice that will be visited upon them by reason of their prior conduct underlying the claims to be asserted at trial. By the same token, Defendants have made it a cornerstone of their case to, *inter alia,* attack the character of Dr. Schottenstein. Personal, prejudicial and irrelevant acts, images and purported character flaws do not offer this Court a valid basis for Defendants to steal money from Plaintiffs. Defendants not only seek to enter unfairly prejudicial matter into the record, but do so maliciously under the guise that it somehow creates a legal defense to stealing millions of dollars.

Under these circumstances, bifurcation appears to be not only justified but beneficial to all parties in this matter.

## CONCLUSION

For all of the foregoing reasons, Plaintiff motion for Partial Summary Judgment and Motion to Bifurcate be granted in their entirety.

Dated: Central Islip, New York
      September 29, 2023

Respectfully Submitted,

*Cory H. Morris /s/*
_____
Cory H. Morris, Esq. (CM5225)
The Law Offices of Cory H. Morris
863 Islip Avenue
Central Islip, NY 11722
P: (631) 450-2515
info@coryhmorris.com

Donner Law
708 Highway 35 South
Neptune, New Jersey 07753
(732) 578-8530

Richard Bruce Rosenthal, Esq.

545 E. Jericho Turnpike
Huntington, New York 11746

*Co-Counsel for Plaintiffs*