UNITED STATES DISTRICT COURT                        PLAINTIFFS' EXHIBIT 2
SOUTHERN DISTRICT OF NEW YORK

====================================

DR. DOUGLAS SCHOTTENSTEIN, M.D.,
THOMPSON REAL ESTATE, LLC, and
SCHOTTENSTEIN PAIN AND NEURO, PLLC            **Docket No.:**
D/B/A NY SPINE MEDICINE                        **22-cv-01197 (DLC)**

              *Plaintiff,*


              -against-


DEREK LEE, PEARL CHAN,
And JOHN AND JANE DOES 1-10,

              *Defendants.*

====================================


### PLAINTIFF'S PROPOSED JURY CHARGES


*For Plaintiffs:*                              *For Defendants:*

*Jeffrey A. Donner, Esq.*                      *Law Office of Andrew L. Hoffman,*
*Donner Law*                                   *P.C.*
*708 Highway 35 South*                         *Andrew L. Hoffman, Esq.*
*Neptune, New Jersey 07753*                    *420 Lexington Avenue, Ste. 300*
*(732) 578-8530*                               *New York, New York 10107*
                                               *Tel: (646) 585-2838*
*Richard Bruce Rosenthal, Esq.*                *Cell: (347) 262-8052*
*545 E. Jericho Turnpike*                      *Fax: (646) 585-2836*
*Huntington Station, New York 11746*           *ahoffman@andrewhoffmanlaw.com*
*(631) 629-8111*

*Cory H. Morris, JD MA*
*863 Islip Avenue, Central Islip NY 11722*

## **PLAINTIFFS' PROPOSED JURY CHARGES**

Pursuant to Rule 51 of the Federal Rules of Civil Procedure and the Court's Individual Rules of Practice, Plaintiffs respectfully request that the Court give the following instructions to the jury, in addition to the Court's general instructions. Plaintiffs reserves the right, and request an opportunity after the close of evidence, to supplement and/or revise these requests based on the evidence presented at trial and on such legal rulings as may be made before or during trial.

# **TABLE OF CONTENTS**

CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATION (RICO) INSTRUCTIONS.................................................................................................... 1

    The Statute.................................................................................................................... 1

    Case Introduction  First Cause of Action (a pattern of racketeering activity or collection of unlawful debt) ................................................................................................................ 1

        18 U.S.C. § 1962(c) ................................................................................................ 2

        Conduct.................................................................................................................... 3

        Enterprise ................................................................................................................ 3

        Pattern .................................................................................................................... 6

        Racketeering Activity ............................................................................................ 7

    Second Cause of Action (Federal Civil RICO Conspiracy – 18 U.S.C. § 1962(d)) Against Defendants Lee and Chan) ......................................................................................... 8

CIVIL FRAUD ................................................................................................................ 10

    Elements of Civil Fraud ............................................................................................ 10

    Civil Fraud: Third Cause of Action .......................................................................... 11

        Civil Fraud Jury Instructions ................................................................................ 16

CONVERSION or WRONGFUL TAKING ...................................................................... 19

Conversion of Money ...................................................................................................... 19

    Elements of Conversion ............................................................................................ 20

    Conversion: Fourth Cause of Action ........................................................................ 20

TORTIOUS INTERFERENCE WITH A CONTRACT ...................................................... 21

    Elements of Tortious Interference with a Contract ................................................... 22

    Tortious Interference: Fifth Cause of Action ............................................................ 22

BATTERY ........................................................................................................................ 23

    Elements of Battery ................................................................................................... 25

    Battery: Sixth Cause of Action ................................................................................. 25

CONSPIRACY TO COMMIT FRAUD............................................................................. 26

    Elements of Conspiracy ............................................................................................ 27

    Conspiracy to commit Fraud: Seventh Cause of Action ........................................... 27

CONSPIRACY TO COMMIT A TORT............................................................................. 27

    Elements of Conspiracy ............................................................................................ 28

Conspiracy to commit a Tort: Eighth Cause of Action .......................................................... 28

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .......................................... 28

    Elements of Intentional Infliction of Emotional Distress ................................................... 30

    Intentional Infliction of Emotional Distress: Ninth Cause of Action ............................... 30

Faithless Employee ............................................................................................................ 31

    Elements of Faithless Employee Claim ............................................................................ 31

    Faithless Employee: Tenth Cause of Action .................................................................... 32

    CREDIBILITY ................................................................................................................... 34

    A.    Police Officer Witness ................................................**Error! Bookmark not defined.**

CLOSING INSTRUCTIONS ............................................................................................... 37

    A. FOREPERSON ............................................................................................................ 38

    B. COMMUNICATION WITH THE COURT ................................................................. 38

    C. JUROR'S RECOLLECTION GOVERNS/READBACK ............................................. 38

    D. DELIBERATIONS AND UNANIMOUS VERDICT ................................................. 39

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page No.**

*Alexander & Alexander Inc. v. Fritzen,* 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547, 503 N.E.2d 102 (1986) ............................................................................................. 29

*Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995) ................................................. 7, 8

*Alpha/Omega Concrete Corp. v Ovation Risk Planners, Inc*., 197 AD3d 1274, 154 NYS38d 113 (2d Dep't. 2021) ........................................................................................... 21

*Ambac Assurance Corporation v Countrywide Home Loans, Inc.*, 31 NY38d 569, 81 NYS3d 816, 106 NE3d 1176 (2018) .......................................................................................... 12

*American Preferred Prescription, Inc. v Health Management, Inc*., 252 AD2d 414, 678 NYS2d 1 (1st Dep't. 1998) .......................................................................................... 23

*Andrew Greenberg Inc. v Sir-Tech Software Inc*., 245 AD2d 1004, 667 NYS2d 83 (3d Dep't. 1997).............................................................................................................................. 23

*Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1998) ................................................... 10

*Associated Coal Sales Corp. v Hughes*, 64 AD2d 562, 406 NYS2d 827 (1st Dep't. 1978) ... 28

*Barry's Auto Body of NY, LLC v Allstate Fire & Casualty Insurance Company*, 190 AD3d 807, 140 NYS3d 246 (2nd Dep't. 2021) ...................................................................... 23

*Bastein v Sotto*, 299 AD2d 432, 749 NYS2d 538 (2nd Dep't. 2002) ...................................... 27

*Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ............................................................. 10

*Bing v Thunig*, 2 NY2d 656, 163 NYS2d 3, 143 NE2d 3 (1957)........................................... 26

*Boyle v. United States*, 556 U.S. 938, 945-46 (2009)......................................................... 4, 5

*Brodsky v Rieser*, 195 App Div 557, 186 NYS 841 (1st Dep't. 1921).................................... 27

*Brown v Yaspan*, 256 App Div 991, 10 NYS2d 502 (2nd Dep't. 1939)................................. 27

*Bull v Colton*, 22 Barb 94 (NY Gen Term 1856) .................................................................. 27

*Cerilli v Kezis*, 16 AD3d 363, 790 NYS2d 714 (2nd Dep't. 2005) ......................................... 27

*Chanko v American Broadcasting Companies Inc.*, 27 NY3d 46, 29 NYS3d 879, 49 NE38d 1171 (2016) .................................................................................................................. 32

*Chanko v American Broadcasting Companies Inc.*, 27 NY3d 46, 29 NYS3d 879, 49 NE3d 1171 (2016) .................................................................................................................. 32

*Clark v New York Telephone Co*., 52 AD2d 1030, 384 NYS2d 562 (4th Dept 1976), *aff'd*, 41 NY2d 1069, 396 NYS2d 177, 364 NE2d 841 (1977)....................................................... 32

*Clayton v Keeler*, 18 Misc 488, 42 NYS 1051 (Sup. 1896) ................................... 26

*Cohen v Varig Airlines* (S.A. Empresa de Viacao Aerea Rio Grandense), 62 AD3d 324, 405 NYS2d 44 (1st Dep't. 1978) ............................................................................ 32

*Colavito v New York Organ Donor Network, Inc*., 8 NY3d 43, 827 NYS2d 96, 860 NE2d 713 (2006) .......................................................................................................... 20, 21

*Connaughton v Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 53 NYS38d 598, 75 NE38d 1159 (2017) ..................................................................................................................... 12

*Cretaro v Huntington*, 203 AD3d 1696, 166 NYS3d 80 (4th Dep't. 2022) ..................... 20, 21

*Cuker Industries, Inc. v William L. Crow Const. Co*., 6 AD2d 415, 178 NYS2d 777 (1st Dep't. 1958) ..................................................................................................................... 28

*D'Angelo v Bob Hastings Oldsmobile, Inc*., 89 AD2d 785, 453 NYS2d 503 (4th Dept 1982), *affd*, 59 NY2d 773, 464 NYS2d 724, 451 NE2d 471 (1983) ............................... 12

*De Santis v Luger*, 257 NY 476, 178 NE 763 (1931) ................................................... 27

*Employers' Fire Ins. Co. v Cotten*, 245 NY 102, 156 NE 629 (1927) ................................ 21

*Errant Gene Therapeutics, LLC v Sloan-Kettering Institute for Cancer Research*, 174 AD3d 473, 106 NYS3d 302 (1st Dep't. 2019) ................................................................... 28

*Feiger v. Iral Jewelry, Ltd*., 41 N.Y.2d 928, 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977) ..................................................................................................................................... 34

*Fischer v Maloney*, 43 NY2d 553, 402 NYS2d 991, 373 NE2d 1215 (1978) ...................... 32

*Fisk* v. *Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) ............................... 29

*Foster v Churchill*, 87 NY2d 744, 642 NYS2d 583, 665 NE2d 153 (1996) .......................... 23

*Geraty v Stern*, 30 Hun 426 (NY Gen Term 1883) ................................................... 27

*Graubard Mollen Dannett & Horowitz v Moskovitz*, 86 NY2d 112, 629 NYS2d 1009, 653 NE2d 1179 (1995) ............................................................................................................. 12

*Gutierrez v McGrath Management Services, Inc*., 152 AD3d 498, 59 NYS3d 52 (2d Dep't. 2017) ..................................................................................................................................... 23

*Gutierrez v McGrath Management Services, Inc.*, 152 AD3d 498, 59 NYS3d 52 (2nd Dep't. 2017) ..................................................................................................................................... 27

*H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989) ................................................... 6, 7

*Halio v Lurie*, 15 AD2d 62, 222 NYS2d 759 (2nd Dep't. 1961) ............................... 32

*Halvatzis v Perrone*, 199 AD3d 785, 156 NYS3d 428 (2d Dep't. 2021) ........................ 20, 21

*Harmoni International Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019) .................... 2

*Hoag v Chancellor, Inc.*, 246 AD2d 224, 677 NYS2d 531 (1st Dep't. 1998) ....................... 28

*Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) ................................................ 7

*Howard*, 208 F.3d 741, 751 (9th Cir. 2000) ............................................................................ 9

*Howell v New York Post Co., Inc.*, 81 NY2d 115, 596 NYS2d 350, 612 NE2d 699 (1993).. 32

*Ikuno v. Yip*, 912 F.2d 306, 308 (9th Cir. 1990) ...................................................................... 8

*Jack Kelly Partners LLC v Zegelstein*, 140 AD3d 79, 33 NYS3d 7 (1st Dep't. 2016).......... 12

*Johnson v Suffolk County Police Dept.*, 245 AD2d 340, 665 NYS2d 440 (2nd Dep't. 1997)  27

*Kickertz v New York University*, 110 AD3d 268, 971 NYS2d 271 (1st Dep't. 2013)............. 23

*Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 595 NYS2d 931, 612 NE2d 289 (1993) ............... 23

*Lama Holding Co. v Smith Barney Inc.*, 88 NY2d 413, 646 NYS2d 76, 668 NE2d 1370 (1996) ......................................................................................................................... 12, 23

*Lamdin v. Broadway Surface Adver. Corp.*, 272 N.Y. 133, 138, 5 N.E.2d 66 (1936).......... 34

*Laurie Marie M. v Jeffrey T.M.*, 159 AD2d 52, 559 NYS2d 336 (2nd Dep't. 1990), *affd*, 77 NY2d 981, 571 NYS2d 907, 575 NE2d 393 (1991) .......................................................... 27

*Leff v Our Lady of Mercy Academy*, 150 AD3d 1239, 55 NYS38d 392 (2nd Dep't. 2017).... 32

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) 3, 4

*Long v Beneficial Finance Co. of New York*, 39 AD2d 11, 330 NYS2d 664 (4th Dep't. 1972) ............................................................................................................................................. 32

*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 919 NYS2d 465, 944 NE2d 1104 (2011) ................................................................................................................................. 12

*Maritime Fish Prods., Inc. v. World-Wide Fish Prods., Inc.*, 100 A.D.2d 81, 474 N.Y.S.2d 281, 287 (1st Dep't 1984) ..................................................................................................... 34

*Masters v Becker*, 22 AD2d 118, 254 NYS2d 633 (2nd Dep't. 1964) .............................. 26, 27

*MBF Clearing Corp. v Shine*, 212 AD2d 478, 623 NYS2d 204 (1st Dep't. 1995)................ 28

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987)................................................................................................................................... 7, 8

*Meese v Miller*, 79 AD2d 237, 486 NYS2d 496 (4th Dep't. 1981)........................................ 21

*Mitran v Williamson*, 21 Misc2d 106, 197 NYS2d 689 (Sup 1960) ..................................... 32

*MUFG Union Bank, N.A. v Axos Bank*, 196 AD3d 442, 152 NYS3d 114 (1st Dep't. 2021) 23

*Murphy v American Home Products Corp.*, 58 NY2d 293, 461 NYS2d 232, 448 NE2d 86 (1983) ................................................................................................................ 32

*Murphy v Murphy*, 109 AD2d 965, 486 NYS2d 457 (2nd Dep't. 1985) ................................ 32

*Nader v General Motors Corp.*, 25 NY2d 560, 307 NYS2d 647, 255 NE2d 765 (1970)...... 32

*Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 262 (1994) ........................................ 3

*NBT Bancorp Inc. v Fleet/Norstar Financial Group, Inc.*, 87 NY2d 614, 641 NYS2d 581, 664 NE2d 492 (1996) ....................................................................................................... 23

*Nestlerode v Federal Ins. Co.*, 66 AD2d 504, 414 NYS2d 398 (4th Dep't. 1979) ................ 32

*Noonan v Luther*, 206 NY 105, 99 NE 178 (1912) ................................................................ 26

*North Shore Bottling Co. v C. Schmidt & Sons, Inc.*, 22 NY2d 171, 292 NYS2d 86, 239 NE2d 189 (1968) ............................................................................................................. 28

*Nostalgic Partners, LLC v New York Yankees Partnership*, 205 AD3d 426, 168 NYS3d 444 (1st Dep't. 2022) ............................................................................................................... 23

*Oddo Asset Management v Barclays Bank PLC*, 19 NY3d 584, 950 NYS2d 325, 973 NE2d 735 (2012) ........................................................................................................................ 23

*Odom v. Microsoft Corp.*, 486 F.3d 541, 546 (9th Cir. 2007) ...................................... 2, 3, 4, 5

*Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th Cir. 2002) ....... 9, 10

*Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) ................................ 2

*Oxford Health Plans (N.Y.), Inc. v Biomed Pharmaceuticals, Inc.*, 181 AD3d 808, 122 NYS3d 47 (2nd Dep't. 2020) ............................................................................................ 23

*Pasternack v Laboratory Corp. of America Holdings*, 27 NY3d 817, 37 NYS3d 750, 59 NE3d 485 (2016) ............................................................................................................. 12

*Petrone v Davidoff Hutcher & Citron, LLP*, 150 AD3d 776, 54 NYS3d 25 (2d Dep't. 2017) ........................................................................................................................................ 21

*Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003)............... 34

*Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) ........................................................... 4

*Reif v Nagy,* 175 AD3d 107, 106 NYS3d 5 (1st Dep't. 2019) ................................................ 20

*Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992)........................... 8

*Rennert Diana & Co., Inc. v Kin Chevrolet, Inc.*, 187 AD2d 589, 524 NYS2d 481 (2nd Dep't. 1988)........................................................................................................................ 28

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ................................................................ 3

*Rivera v State*, 34 NY3d 3838, 119 NYS3d 749, 142 NE3d 641 (2019) .............................. 27

*Roach v Stern*, 252 AD2d 488, 675 NYS2d 133 (2nd Dep't. 1998)........................................ 32

*Ross v Louise Wise Services, Inc.*, 8 NY3d 478, 8836 NYS2d 509, 868 NE2d 189 (2007) .. 12

*Salinas v. United States*, 522 U.S. 52, 65 (1997)...................................................................... 9

*Schloendorff v Society of New York Hospital*, 211 NY 125, 105 NE 92 (1914) ................... 26

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985)................................................. 8

*Seneca Wire & Mfg. Co. v A.B. Leach & Co.*, 247 NY 1, 159 NE 700 (1928)...................... 12

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992)........................................ 4, 6

*Shear Enterprises, LLC v Cohen*, 189 AD3d 423, 1837 NYS3d 306 (1st Dep't. 2020)......... 23

*Smith v Fitzsimmons*, 180 AD2d 177, 584 NYS2d 692 (4th Dep't. 1992).............................. 28

*Staples v Sisson*, 274 AD2d 779, 711 NYS2d 550 (3rd Dep't. 2000) ..................................... 26

*Stuart's, LLC v Edelman*, 196 AD3d 711, 152 NYS3d 472 (2nd Dep't. 2021) ..................... 23

*Supreme Showroom, Inc. v. Branded Apparel Group, LLC*, 2018 U.S. Dist. LEXIS 107902*; 2018 WL 3148357 (S.D.N.Y. 2018) ................................................................................... 33

*Treppel v. Biovail Corp.,* No. 03 Civ. 3002, 2004 WL 2339759, at *19 (S.D.N.Y. Oct. 15, 2004)....................................................................................................................................... 29

*United States v. Benny*, 786 F.2d 1410, 1416 (9th Cir. 1986)................................................... 4

*United States v. Blakstad*, No. 19 Cr. 486 (ER) (S.D.N.Y. Nov. 9, 2021) ............................. 28

*United States v. Christensen*, 801 F.3d 970, 985 (9th Cir. 2015)............................................. 5

*United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004).................................... 10

*United States v. Rojas,* 617 F.3d 669, 674 (2d Cir. 2010) ...................................................... 28

*United States v. Turkette*, 452 U.S. 576, 580 (1981) ................................................................ 4

*Vermeer Owners, Inc. v Guterman*, 78 NY2d 1114, 578 NYS2d 128, 585 NE2d 377 (1991) .................................................................................................................................................. 12

*Walter v. Drayson*, 538 F.3d 1244, 1248-49 (9th Cir. 2008) ................................................... 3

*Webster v. Omnitron Int'l*, 79 F.3d 776, 787 (9th Cir. 1996)................................................. 10

*Wechsler v. Bowman*, 285 N.Y. 284, 292, 34 N.E.2d 322 (1941)........................................... 34

*Wende C. v United Methodist Church*, 4 NY3d 293, 794 NYS2d 282, 827 NE2d 265 (2005) ............................................................................................................................................ 26, 27

*Western Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977) ......................................................................................................... 33

*White Plains Coat & Apron Co., Inc. v Cintas Corp.*, 8 NY3d 422, 835 NYS2d 530, 867 NE2d 381 (2007) ........................................................................................... 23

*Wilcox v. First Interstate Bank*, 815 F.2d 522, 531-32 (9th Cir. 1987)................................ 8

*World Wrestling Federation Entertainment, Inc. v. Bozell,* 142 F.Supp.2d 514, 532-533 (S.D.N.Y.2001) ...................................................................................... 29

**Statutes**

18 U.S.C. § 1028(a)(7) ........................................................................................... 9

18 U.S.C. § 1029(a)(2) ........................................................................................... 9

18 U.S.C. § 1029(a)(7) ........................................................................................... 9

18 U.S.C. § 1961 ................................................................................................... 8

18 U.S.C. § 1961(1) ............................................................................................... 9

18 U.S.C. § 1961(3) ............................................................................................... 1

18 U.S.C. § 1961(4) ............................................................................................ 3, 5

18 U.S.C. § 1961(5) ............................................................................................ 6, 9

18 U.S.C. § 1962(c) ....................................................................................... 1, 2, 3, 9

18 U.S.C. § 1962(d) ......................................................................................... 2, 9, 10

18 U.S.C. § 1964(c) ............................................................................................... 1

18 U.S.C. §§ 1343 ................................................................................................. 9

**Other Authorities**

Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:1 to PJI 3:60.4, P. (2022) ...................................................................................... passim

**Treatises**

15 ALR2d 108 ..................................................................................................... 32

38 ALR4th 998 .................................................................................................... 32

3B Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, Fed. Jury Practice & Instructions §§161.01–161.100 (5th ed. 2001 & Supp. 2012) ................................. 1

Eleventh Circuit Pattern  Jury Instructions (Civil Cases), Civil RICO General Instruction 5.1

(2005); *available at*:
https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstructionsRevisedMAR2022.pdf .............................................................................................. 1

Harper & James, *The Law of Torts*, 211, §§ 3.1-3.3.................................................. 26

*Harper & James, The Law of Torts* 665, § 9.2 ...................................................... 32

*Harper & James, The Law of Torts 665*, §§ 9.1, 9.2 ............................................. 32

NYJur2d, Assault—Civil Aspects § 4 ..................................................................... 26

*Prosser & Keeton*, Torts (5th ed) 54 ............................................................... 26, 32

Restatement (Second) of Agency (1958), § 469) ................................................... 34

Restatement, Second, Torts § 13-20 ....................................................................... 26

Restatement, Second, Torts § 13-20; 6A NYJur2d, Assault—Civil Aspects § 4.................. 26

Restatement, Torts 2d § 46 .................................................................................... 32

## CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATION (RICO) INSTRUCTIONS[1]

## The Statute

A plaintiff may bring a private civil action under the provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), alleging a violation of Title 18 U.S.C. § 1962(a), (b), (c) or (d).[2] *See also* 18 U.S.C. § 1964(c).

## Case Introduction

## First Cause of Action (a pattern of racketeering activity or collection of unlawful debt)

In this lawsuit, Dr. Douglas Schottenstein, M.D., Thompson Real Estate, LLC., and Schottenstein Pain and Neuro, PLLC d/b/a NY Spine Medicine are suing two former employees Derek Lee ("Lee") and Pearl Chan ("Chan"), and John and Jane Does 1-10 for money damages and non-monetary relief. Defendants were at one time employed by Plaintiffs, specifically, the Medical Practice, with Chan initially serving as a medical assistant and, ultimately, as office manager, and Lee serving as a medical assistant.

In this case, Plaintiff is a person[3] and Defendants Lee and Chan are persons as defined by the RICO Statute. Under 18 U.S.C. § 1962(c) it shall be unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of

---

[1] This instruction relies upon United States District Court, *8. Civil Rico,* United States Courts for the Ninth Circuit: Manual of Model Civil Jury Instructions (April, 2019); *available at:* https://www.ce9.uscourts.gov/jury-instructions/node/134.

[2] This instruction relies upon Committee on Civil Pattern Jury Instructions, *Pattern Jury Instructions (Civil Cases)*, District Judges Association Fifth Circuit, P. 79 (2020); *available at:* https://www.lb5.uscourts.gov/juryinstructions/Fifth/2020civil.pdf; see also Eleventh Circuit Pattern  Jury Instructions (Civil Cases), Civil RICO General Instruction 5.1 (2005); *available at:* https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstructionsRevisedMAR2022.pdf; and 3B Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, Fed. Jury Practice & Instructions §§161.01–161.100 (5th ed. 2001 & Supp. 2012).

[3] See Plaintiffs' Second Amended Complaint ("Comp."), Docket Entry 131 ¶¶ 90 (citing 18 U.S.C. §§ 1961(3) and 1964(c)).

which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt." And, under 18 U.S.C. § 1962(d), it shall be unlawful to conspire to violate any of the RICO substantive provisions, including section 1962(c). The RICO statute prohibits four types of activities: (1) investing in, (2) acquiring, or (3) conducting or participating in an enterprise with income derived from a pattern of racketeering activity or collection of an unlawful debt, or (4) conspiring to commit any of the first three types of activity. 18 U.S.C. § 1962(a)–(d). RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."[4]  However, the statute is to "be liberally construed to effectuate its remedial purposes."[5]

As to the element of causation, a plaintiff must prove that the defendant's unlawful conduct was the proximate cause of the plaintiff's injury.[6]

RICO claims are most commonly brought under 18 U.S.C. § 1962(c) and (d), the conduct and conspiracy prongs of the statute.

**18 U.S.C. § 1962(c)** [7]

To recover under § 1962(c), a plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct

---

[4] *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005).
[5]  *Odom v. Microsoft Corp.*, 486 F.3d 541, 546 (9th Cir. 2007).
[6] *Harmoni International Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019).
[7] This instruction relies upon United States District Court, *8. Civil Rico*, United States Courts for the Ninth Circuit: Manual of Model Civil Jury Instructions (April, 2019); *available at*: https://www.ce9.uscourts.gov/jury-instructions/node/134.

constituting the violation.[8]

**Conduct:** The conduct element of § 1962(c) requires that the defendant have some part in directing the affairs of the enterprise. Liability is not limited to those with primary responsibility for the enterprise's affairs, nor is a formal position within the enterprise required. However, the defendant is not liable under § 1962(c) unless the defendant has participated in the operation or management of the enterprise itself.[9]  In determining whether the conduct element has been satisfied, relevant questions include whether the defendant "occupies a position in the chain of command," "knowingly implements [the enterprise's] decisions," or is "indispensable to achieving the enterprise's goal."[10]

**Enterprise:** [11] An "enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The "definition is not very demanding."[12] RICO does not require that either the racketeering enterprise or the predicate acts of racketeering be motivated by an economic purpose.[13]

For purposes of § 1962(c), a single individual or entity cannot be both the RICO enterprise and an individual defendant.[14]  However, "the inability of a corporation to

---

[8] *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

[9] *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (holding that accountants hired to perform audit of cooperative's records did not participate in "operation or management" of cooperative's affairs by failing to inform cooperative's board of directors that cooperative was arguably insolvent).

[10] *Walter v. Drayson*, 538 F.3d 1244, 1248-49 (9th Cir. 2008) (holding that attorney's performance of services for alleged associated-in-fact enterprise was not sufficient to satisfy § 1962(c)'s conduct element)

[11] This instruction relies upon United States District Court, *8. Civil Rico,* United States Courts for the Ninth Circuit: Manual of Model Civil Jury Instructions (April, 2019); *available at:* https://www.ce9.uscourts.gov/jury-instructions/node/134.

[12] *Odom*, 486 F.3d at 548.

[13] *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 262 (1994).

[14] *See Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) (holding that plaintiff could not assert RICO claim against defendant bank because bank was also alleged to be RICO enterprise).

operate except through its officers is not an impediment to § 1962(c) suits."[15] An organizational defendant can be a member of a larger associated-in-fact enterprise.[16]

An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."[17] Its existence is proven through evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit. No particular organizational structure, separate or otherwise, is necessary for an associated-in-fact enterprise.[18] Defendants in RICO actions must have had "some knowledge of the nature of the enterprise . . . to avoid an unjust association of the defendant[s] with the crimes of others," but the requirement of a common purpose may be met so long as the defendants were "each aware of the essential nature and scope of [the] enterprise and intended to participate in it."[19]

A RICO enterprise is not defeated even when some of the enterprise's participants lack detailed knowledge of all of the other participants or their activities. Instead, "it is sufficient that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role." *Id*. In particular cases, "the evidence used to prove the pattern of racketeering activity and the evidence

---

[15] *Sever v. Alaska Pulp Corp*., 978 F.2d 1529, 1534 (9th Cir. 1992) (holding that individual officers of corporation could be named as defendants even though corporation was alleged to be enterprise and could not act without its officers); *see United States v. Benny*, 786 F.2d 1410, 1416 (9th Cir. 1986) (stating that corporate form is "sort of legal shield for illegal activity that Congress intended RICO to pierce.")

[16] *See Living Designs*, 431 F.3d at 361 (finding associated-in-fact enterprise could be formed between defendant corporation, law firms employed by it and expert witnesses retained by law firm).

[17] *Boyle v. United States*, 556 U.S. 938, 945-46 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)).

[18] *Odom*, 486 F.3d at 551 (finding that plaintiffs had sufficiently alleged associated-in-fact enterprise between defendant software manufacturer and co-defendant retailer wherein defendants established cross-marketing scheme for transferring plaintiffs' personal information from retailer to manufacturer in order to allow manufacturer to improperly charge plaintiffs for services); *see also Boyle*, 556 U.S. at 945-46 ("It is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.").

[19] *United States v. Christensen*, 801 F.3d 970, 985 (9th Cir. 2015).

establishing an enterprise" may overlap.[20]  However, "enterprise" and "conduct" are two separate and necessary elements of a civil RICO claim.[21]

 In this case, Plaintiff alleges "The Enterprise is Schottenstein Pain & Neuro, PLLC."[22] Plaintiffs allege that "Defendants Lee and Chan were employed for this legal entity for a number of years, Chan as Office Manager and Lee as a medical assistant, and thus conducted and managed the affairs of the entity." *Id.* Plaintiffs submit that "[t]he activities of the Enterprise affected interstate commerce as it provided services to clients, who are located in other states and is a business which used goods and services which travel in interstate commerce." *Id.* Plaintiffs further allege that "[a]lthough Lee's employment for the entity had been terminated prior to the wire frauds occurring during the year 2020, he remained on the payroll (since Chan did not delete him therefrom), had participated for years in the AMEX access device fraud, directly participated in the wire frauds by impersonating Dr. Schottenstein in order to effect same, and continued to conspire with Chan regarding all racketeering activities." *Id.*

 In this case, Plaintiffs submit the "The Enterprise is alternatively an association in fact consisting of Lee and Chan (and any other persons not yet known which associated with them)... for the purpose of defrauding Plaintiffs and enriching the alternative Enterprise's members and associates."[23] Plaintiffs allege that "[t]he purpose of the alternative Enterprise was to defraud Plaintiffs of monies and properties through wire fraud, mail fraud, identification fraud, the impersonation of an attorney and others, check fraud and other fraudulent activity in connection with access devices (AMEX

---

[20] *Boyle*, 556 U.S. at 947.
[21] *Odom*, 486 F.3d at 549 ("The 'enterprise' is the actor, and the 'pattern of racketeering activity' is an activity in which that actor engages.").
[22] Comp. ¶ 93 (citing 18 U.S.C. § 1961(4)).
[23] Comp. ¶ 94.

Fraud and the unauthorized withdrawal of funds from Plaintiffs' accounts). The monies obtained by these various schemes were used for Defendants' personal enrichment." *Id.*

**Pattern**[24]**:** A pattern is defined as "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). Proving two predicate acts is a necessary condition for finding a violation, but may not be sufficient.[25]  To establish a "pattern of racketeering activity," the predicate acts must be both "related" and "continuous." *Id.*; *Sever*, 978 F.2d at 1529.

Related conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."[26]  Relatedness of the alleged or proven predicate acts is rarely an issue.[27]  However, merely alleging that the predicate acts share the same participants is insufficient to establish that they are related.[28]

The continuity requirement reflects Congress's concern in RICO with long-term criminal conduct.[29]  Plaintiffs must prove either "open-ended" or "closed-ended" continuity—that is, a plaintiff must either prove a series of related predicate acts committed over a substantial period of time (known as closed-ended continuity), or show past conduct that by its nature projects into the future with a threat of repetition

---

[24] This instruction relies upon United States District Court, *8. Civil Rico,* United States Courts for the Ninth Circuit: Manual of Model Civil Jury Instructions (April, 2019); *available at*: https://www.ce9.uscourts.gov/jury-instructions/node/134.
[25] *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989).
[26] *H.J., Inc.*, 492 U.S. at 240.
[27] *See Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987) (finding alleged predicate acts to be related when all were directed toward inducing plaintiff to enter into joint venture and provide funds to obtain certain rights).
[28] *See Howard v. Am. Online Inc*., 208 F.3d 741, 749 (9th Cir. 2000) (finding that when the purpose, result, victim and method of one set of predicate acts were "strikingly different" from those of the other set of alleged predicate acts, fact that both sets implicated same participants was not enough to establish relatedness).
[29] *See H.J., Inc*., 492 U.S. at 242.

(known as open-ended continuity). *See id.* at 241-42; *Howard*, 208 F.3d at 750. There is no bright line rule for what period of time the pattern of activity must extend to establish closed-ended continuity, though activity spanning only several months is unlikely to satisfy the requirement.[30]

     **Racketeering Activity**[31]**:** To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961.[32]  Predicate acts must be proved by a preponderance of the evidence.[33]

     In this case, Plaintiffs submit that "From in or about the year 2016, and continuing up through the year 2020, the RICO Defendants, persons associated with or employed by the Enterprise, did knowingly and unlawfully conduct, or participate, directly or indirectly, in each Enterprise through a pattern of racketeering activity consisting of abuse of credit cards through unauthorized charges, wire fraud, manual and digital theft of funds on deposit in a financial institution, a forged check, unauthorized payroll, faithless employee receipt of funds, and attempted murder.."[34]

---

[30] *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995) (noting that it would be "misguided" to state as "hard and fast rule" that to establish closed-ended continuity, pattern of activity must extend more than a year, but also stating that activity spanning only several months without threatening any future criminal conduct does not meet continuity requirement); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992) ("[T]he alleged activity continued for six months at most . . . . We have found no case in which a court has held the [closed-ended continuity] requirement to be satisfied by a pattern of activity lasting less than a year."). Open-ended continuity is shown through "predicate acts that specifically threaten repetition or that become a regular way of doing business." *Allwaste*, 65 F.3d at 1528; *see, e.g., Ikuno v. Yip*, 912 F.2d 306, 308 (9th Cir. 1990) (finding open-ended continuity based on two filings of false annual trading reports for phantom commodity trading company and no evidence that defendant would have stopped filing false annual reports if company had continued to do business); *Medallion*, 833 F.2d at 1364 (finding continuity requirement not satisfied because fraud engaged in posed no threat of future activity).

[31] This instruction relies upon United States District Court, *8. Civil Rico,* United States Courts for the Ninth Circuit: Manual of Model Civil Jury Instructions (April, 2019); *available at*: https://www.ce9.uscourts.gov/jury-instructions/node/134.

[32] *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act.").

[33] *See Wilcox v. First Interstate Bank*, 815 F.2d 522, 531-32 (9th Cir. 1987).

[34] Comp. ¶ 98 (citing 18 U.S.C. §§ 1961(1) and 1961(5), all in violation of 18 U.S.C. § 1962(c)).

## Second Cause of Action (Federal Civil RICO Conspiracy – 18 U.S.C. § 1962(d)) Against Defendants Lee and Chan)

In this case, "Plaintiffs allege that commencing in or about late 2016 or early 2017, the RICO Defendants described above conspired to violate section 1962(c), i.e., each agreed that a co-conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, consisting of acts indictable under 18 U.S.C. §§ 1343, 18 U.S.C. § 1028(a)(7); 1029(a)(2) and (a)(7); and attempted murder, as more fully described in the First Cause of Action. Plaintiffs allege that the conspiratorial objective of that mutual agreement was intended to obtain Plaintiffs' interests in business and/or property, and that such conspiratorial conduct violates RICO § 1962(d)."[35]

### 18 U.S.C. § 1962(d)[36]

A RICO conspiracy under § 1962(d) may be established by proof of an agreement to commit a substantive violation of RICO.[37]  The conspirator need not have agreed to commit or facilitate each and every part of the substantive offense.[38]  However, the conspirator must have been "aware of the essential nature and scope of the enterprise and intended to participate in it."[39]  The "agreement need not be express as long as its existence can be inferred from words, actions, or interdependence of activities and persons involved."[40]  If a RICO conspiracy is demonstrated, "[a]ll

---

[35] Comp. ¶ 123.

[36] This instruction relies upon United States District Court, *8. Civil Rico,* United States Courts for the Ninth Circuit: Manual of Model Civil Jury Instructions (April, 2019); *available at*: https://www.ce9.uscourts.gov/jury-instructions/node/134.

[37] *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th Cir. 2002) ("It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy").

[38] *Howard*, 208 F.3d 741, 751 (9th Cir. 2000) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)).

[39] *Id*. (citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)).

[40] *Oki Semiconductor Co.*, 298 F.3d at 775.

conspirators are liable for the acts of their co-conspirators." *Id.*

A defendant can be held liable for a RICO conspiracy if the evidence shows that he or she "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise."[41]  There is no requirement that the defendant have actually conspired to operate or manage the enterprise himself or herself. *Id.* (affirming conviction under § 1962(d) of defendant who collected money on behalf of member of enterprise, facilitated communications between conspirators and accepted payment for drugs sold through enterprise).

Section 1962(d) applies to intracorporate, as well as intercorporate conspiracies; thus, it is possible for a corporation to engage in a RICO conspiracy with its own officers and representatives.[42]  Plaintiffs further alleged "Each RICO Conspiracy Defendant intended to further the schemes to defraud and commit crimes, which as described in First Cause of Action were completed and satisfied by the acts of at least one substantive individual Defendant. As demonstrated in detail above, Chan and Lee have engaged in numerous predicate racketeering acts in furtherance of the conspiracy including systemic fraudulent practices designed to defraud Plaintiffs of money and other property interests."[43]

Lastly, Plaintiffs submit that "The nature of the above-described acts, material misrepresentations, and omissions in furtherance of the conspiracy give rise to an inference that each Defendant not only agreed to the objective of an 18 U.S.C. §1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but was aware that his

---

[41] *United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004).
[42] See *Webster v. Omnitron Int'l*, 79 F.3d 776, 787 (9th Cir. 1996) (quoting with approval *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1998), for the proposition that "intracorporate conspiracies … threaten RICO's goals of preventing the infiltration of legitimate businesses by racketeers and separating racketeers from their profits").
[43] Comp. ¶ 124.

ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity." *Id.* at ¶ 125.

## CIVIL FRAUD[44]

As you have heard, the Plaintiffs seek to recover damages that they claim were caused by a fraud committed by the defendants Lee and Chan. Specifically, Plaintiffs claim that Lee and Chan engaged in credit card fraud,  wire fraud, manual and digital theft of funds on deposit with a financial institution, a forged check, unauthorized payroll, faithless employee receipt of funds, and attempted murder.  Lee and Chan deny that they committed these frauds in that Plaintiff Dr. Schottenstein authorized these activities.

## Elements of Civil Fraud

D In an action to recover for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which rendered the representation false and was known to be false by the defendant, made for the purpose of inducing the other party to rely upon it (scienter), justifiable reliance of the other party on the misrepresentation or material omission, and injury.[45]

---

[44] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:1 to PJI 3:60.4, P. (2022), P. 178; available at: https://archive.org/download/newyorkpatternju02unse_1/newyorkpatternju02unse_1.pdf (hereinafter "PJI").

[45] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:1 to PJI 3:60.4, P. (2022), P. 178 (citing *Ambac Assurance Corporation v Countrywide Home Loans, Inc.*, 31 NY38d 569, 81 NYS3d 816, 106 NE3d 1176 (2018); *Connaughton v Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 53 NYS38d 598, 75 NE38d 1159 (2017); *Pasternack v Laboratory Corp. of America Holdings*, 27 NY3d 817, 37 NYS3d 750, 59 NE3d 485 (2016); *Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 919 NYS2d 465, 944 NE2d 1104 (2011); *Ross v Louise Wise Services, Inc.*, 8 NY3d 478, 8836 NYS2d 509, 868 NE2d 189 (2007); *Lama Holding Co. v Smith Barney Inc.*, 88 NY2d 413, 646 NYS2d 76, 668 NE2d 1370 (1996); see *Graubard Mollen Dannett & Horowitz v Moskovitz*, 86 NY2d 112, 629 NYS2d 1009, 653 NE2d 1179 (1995); *Vermeer Owners, Inc. v Guterman*, 78 NY2d 1114, 578 NYS2d 128, 585 NE2d 377 (1991); but see *Seneca Wire & Mfg. Co. v A.B. Leach & Co.*, 247 NY 1, 159 NE 700 (1928) (proof of scienter not necessary to support claim for rescission based on fraudulent inducement); *D'Angelo v Bob Hastings Oldsmobile, Inc.*, 89 AD2d 785, 453 NYS2d 503 (4th Dep't. 1982), *affd*, 59 NY2d 773, 464 NYS2d 724, 451 NE2d 471 (1983) (same); *Jack Kelly Partners LLC v Zegelstein*, 140 AD3d 79, 33 NYS3d 7 (1st Dep't. 2016) (same).

## Civil Fraud: Third Cause of Action

Plaintiffs allege and reassert that Plaintiffs are the victims of Defendants' willful acts constituting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1962 *et seq*., fraud, conversion, tortious interference with contract, battery, conspiracies to commit fraud and tort, and negligent or intentional infliction of emotional distress.

In late 2016, Plaintiff Douglas Schottenstein, M.D. advised Defendant Pearl Chan that she would be promoted to the position of office manager for Plaintiff Schottenstein Pain and Neuro, PLLC (the "Medical Practice") as Cara Camden, the then-current office manager, prepared to leave that position.

Sometime later, in early 2017, Plaintiffs hired Defendant Derek Lee as a medical assistant. Shortly thereafter, in 2017, Chan and Lee in concert with each other began charging their personal expenses to American Express cards on the company account for the Medical Practice without the authorization or consent of Dr. Schottenstein.

These credit cards had been provided to them for the sole purpose of performing their respective responsibilities as employees to obtain supplies for the Medical Practice and to enable the day to day business needs of the office to be met without requiring Dr. Schottenstein to supervise every detail.

These unauthorized American Express card abuses were followed by an organized campaign implemented by Chan and Lee from mid-2017 through late 2020 to embezzle, misappropriate and steal millions of dollars from Plaintiffs by means of bank fraud, wire fraud, unauthorized withdrawals (both manual and electronic), identity theft and credit card fraud.

Moreover, although Lee was terminated by Plaintiffs in or about mid-2019, and

no later than July 1, 2019, Chan left Lee on the Medical Practice payroll enabling him to continue to receive salary checks that were wholly unearned and costing the Medical Practice additional dollars in Social Security contributions and Medicare tax.

Based upon the foregoing continuing acts of Chan and Lee over the approximate three-year period at issue, and the tracing of the stolen funds into the bank accounts of Chan and Lee, these Defendants breached their duty of loyalty and trust as employees and further exhibited misconduct and unfaithfulness in their employment service to Plaintiffs. As a result, Plaintiffs further claim faithless employee damages consisting of the $1.255 million in salary and bonuses paid to these Defendants from mid-2017 through November, 2020 together with additional bonus payments. During this period, Defendants Chan and Lee caused Plaintiffs to incur compensatory damages in excess of $3,634,285.

In late 2016, Dr. Schottenstein opened a checking account for Thompson Real Estate, LLC at Citibank (the "Thompson Account") with the intention of using this account for the sole purpose of making  monthly mortgage payments for his residence. [D.E.82-2 and 3,  E-Mails dated November 25 and 26, 2016 and January 11, 2017 (DS-LEE 00056-00058 and 00224-00225)]. One of Chan's responsibilities as office manager was to make the monthly mortgage payment from the Thompson Account. [D.E. 82-3,  E-Mail dated January 24, 2017 (DS-LEE 00225-00225)].

Two unauthorized wire transfers totaling $748,798 were initiated and withdrawn by Defendants Chan and Lee from the Thompson Account at Citibank, and the proceeds of both were subsequently deposited into an account owned by Lee in JP Morgan Chase Bank ("Chase"). The first such withdrawal in the amount of $429,741 occurred on February 20, 2020, and the second withdrawal of $319,057 occurred on March 20,

12

2020. [D.E. 84-2: Balla Economic Damages Report at p. 13 and Report Exhibit 1 and Appendix H and Report Exhibit 2 and Appendix I.]. In the interim between these two wires, Lee attempted to sire to his account at Chase $319,107.63 on or about February 28, 2020, which wire failed to go through. In addition, on August 28, 2020, Lee deposited $100,000 into Dr. Schottenstein's Account at Iberia Bank without authorization to do so. This deposit was intended to conceal Chan and Lee's wrongful activities.

The withdrawals of both wires from the Thompson Account and their subsequent deposits into Defendant Lee's Chase account on February 20, 2020 and March 20, 2020 have been traced together with subsequent transfers of these funds by Lee into two other Chase accounts that he owns. [DE 84-2, Balla, Economic Damages Report at p. 13 and Report Exhibit 1 and Appendix H and Report Exhibit 2 and Appendix I.]. In order to conceal the wire fraud in the Thompson Account, Defendants intercepted snd redirected monthly mortgage payments which as a result remained unpaid ultimately causing the residence to fall into foreclosure.

Defendants then criminally impersonated Tracy Pearson, Esq., an attorney Chan had represented to Dr. Schottenstein had been hired to assist him, to provide false written assurances that the mortgage loan account was current. Defendants Chan and Lee have formally admitted in writing that they caused and facilitated the $429,741 wire from the Thompson Account on February 20, 2020 and the $319,057 wire from the Thompson Account on March 20, 2020. [D.E. 82-9: Defendants Chan and Lee's Responses to Plaintiffs' First Set of Discovery Demands, Part I: Requests for Admissions, ## 33, 34, 35, 36, 41, and 43].

Dr. Schottenstein opened American Express cards under the Medical Practices

company account for both Chan and Lee to be used by them for purposes related to the Medical Practice. Commencing in 2017, Chan and Lee used the American Express cards assigned to each of them for unauthorized personal expenses that could not be substantiated for a business purpose. During the years, 2017 through 2019, Lee's unauthorized American Express charges totaled $399,907 and Chan's unauthorized American Express charges totaled $200,547 for total unauthorized American Express charges of $600,455 during this period. [D.E.83 and 84: Balla, Economic Damages Report at p. 13, and Report  Exhibits 3, 4 and Appendix J.]

During the years 2017 through 2019, Chan made numerous unauthorized cash withdrawals from the Medical Practice's Account at Chase totaling $528,283. [D.E. 84-5 and 6: Balla, Economic Damages Report at p. 14, and Report Exhibit 5 and Appendix K.]

Unauthorized transfers were made from the Medical Practice's Account at Chase to Defendants Chan and Lee's accounts via Chase QuickPay and QuickPay with Zelle during the years 2017-2019. These transfers were made without the authorization or knowledge of Dr. Schottenstein.

Defendant Chan received a total of $12,400 in these transfers during this period. Both the withdrawals from the Medical Practice's Account at Chase and the deposits into the Chan account at Bank of America ("BOA") have been traced. [D.E. 84-7 through 9: Balla, Economic Damages Report at p.14, and Report Exhibits 6, 7 and Appendices L and M.] During 2017 and 2018 Lee received a total of $193,831 in Chase QuickPay and QuickPay with Zelle unauthorized cash transfers from the Medical Practice's Account at Chase. The deposits of these funds into three separate accounts owned by Lee at Chase have been traced. D.E. 84-7 through 9: Economic Damages Report at p. 14, and Report Exhibits 6,7 and Appendices L and M].

14

In or about mid-2019, Defendant Derek Lee was terminated from his position at the Medical Practice.  Nevertheless, without advising Dr. Schottenstein, Defendant Chan abused her position as office manager by keeping  Lee (her undisclosed husband) on payroll thereby enabling him to continue to collect paychecks for unearned salary amounts until he was effectively removed from the payroll system as of November 1, 2020.  After confirming the gross wages received by Defendant Lee during 2019 and 2020 and using July 1, 2019 as the termination date for Lee's employment by the Medical Practice, the prorated wage amounts for 2019 and 2020 were used to calculate the portions of Social Security and Medicare tax paid by the Medical Practice for the same period. These calculations resulted in $97,796 of costs incurred by the Medical Practice in 2019 and $79,357 of costs incurred by the Medical Practice in 2020, or $177,153 in total, paid on behalf of Lee during the period July 1, 2019 through October 30, 2020. [D.E. 84-2 and 9:  Balla, Economic Damages Report at p. 15, and Report Appendix N.

Dr. Schottenstein established an Account that he solely owns at Iberia Bank. Dr. Schottenstein has confirmed that his signature was forged on a $118,000 check that was withdrawn from the Schottenstein Iberia Account. This check was not deposited in any account owned by Dr. Schottenstein. The only persons other than Dr. Schottenstein that had access to this Iberia Account were Defendant Chan and Defendant Lee through Chan. The September 2020 bank statement for this Iberia Account documents the cancelled check and its withdrawal from this Iberia Account. Defendants Chan and Lee admit that they absconded with $118,000 by cashing this check. [D.E.84-2 and 11: Balla, Economic Damages Report at p. 16, and Report Appendix P.].

Dr. Schottenstein confirms that none of the foregoing transfers, payments and

15

charges were authorized or consented to by him and were in each instance improperly taken by Chan and Lee. The Economic Damages Report and the analysis and review of the documents discussed therein and attached to the Report as Exhibits and Appendices delineated above identify and confirm numerous bank transfers between the Medical Practice Account and Thompson Account and those accounts in the name of Chan and Lee, which were not for the business expenses of either the Medical Practice or Thompson Real Estate, LLC. In addition, the supporting documentation reviewed evidences the receipt of various wire transfers and payments into the bank accounts of Defendants Chan and Lee.

### Civil Fraud Jury Instructions

In order to recover for fraud, Plaintiffs must prove by clear and convincing evidence that (1)  a Defendant made a statement of material fact; (2) the statement was false; (3) Defendant either knew that the statement was false or made the statement recklessly without regard to whether it was true or false; (4) Defendant made the statement to convince Plaintiffs to rely upon it; (5) Plaintiffs did rely on CD's statement; (6) Plaintiffs' reliance on CD's statement was justifiable; and (7) Plaintiffs sustained damages because of (his, her, its) reliance on Defendant's statement.

Clear and convincing evidence means evidence that satisfies you that there is a high degree of probability that there was fraud as I have defined it for you. To decide for Plaintiffs by clear and convincing evidence, it is not enough to find that the evidence supporting (his, her, its) case more nearly represents what actually happened than the evidence that is opposed to it. Plaintiffs must satisfy you that the evidence makes it highly probable that what (he, she) claims is what actually happened.

If, upon all the evidence, you are satisfied that there is a high probability that

16

there was fraud, you must decide for Plaintiffs. If you are not satisfied that there is such a high probability, you must decide for Defendants.

The first question you will be asked to decide is whether Defendants stated to Plaintiffs (1) that the unauthorized charges on American Express were not made by them but pursuant to a crime by a third party unknown and for which they had requested the police to investigate and (2) the Bank that held the mortgage on the residence where Dr. Schottenstein lives was in error in stating the mortgage was in arrears since checks for the monthly charges for the mortgage had been mailed to the Bank by Defendants when they had not, and later told Dr. Schottenstein through Tracy Pearson, Esq., whom Defendants impersonated, that the mortgage was not in foreclosure when it was. Defendants offer no explanation or defense for their fraudulent statements, admit that they made the American Express charges and further admit that they impersonated Tracy Pearson, Esq. . If you decide that Defendants did not make the foregoing statements to Plaintiffs , you need proceed no further on the claim of fraud.

If you decide that Defendants did make the foregoing statements, the next question you must decide is whether that statement was material. A statement of fact is material if a reasonable person would consider it important. If you decide that Defendants' statements were not material, you need proceed no further on the claim of fraud. If you decide that Defendants' statement was material, you must next decide whether the statement was false.[46]

The next question you will be asked to decide is whether Defendants' statement was false. A statement is false if, taken as a whole, it communicates something that is

---

[46] *Id.* (PJI: 320) at P. 179.

untrue when considered from the viewpoint of an ordinary person. If you decide that the statement was true, you need proceed no further on the claim of fraud. If you decide that the statement was false, you must next decide whether Defendants either knew it was false or made the statement recklessly without regard to whether it was true or false. A statement is made recklessly if it is made when the person making it does not have an honest and reasonable belief in its truth.

The next question you will be asked to decide is whether Defendants' statement was false. A statement is false if, taken as a whole, it communicates something that is untrue when considered from the viewpoint of an ordinary person. If you decide that the statement was true, you need proceed no further on the claim of fraud. If you decide that the statement was false, you must next decide whether Defendants either knew it was false or made the statement recklessly without regard to whether it was true or false. A statement is made recklessly if it is made when the person making it does not have an honest and reasonable belief in its truth.

If you decide that Defendants did not make the statement in order to convince Plaintiffs that the American Express charges were made illegally by an unknown third party and were under police investigation and/or that the mortgage payments had been mailed to the Bank and the mortgage was not in foreclosure,  you need proceed no further on the claim of fraud. If you decide that Defendants did make the statement in order to convince Plaintiffs of the foregoing,  you must next decide whether Plaintiffs relied on the statement.

The next question[47] you will be asked to decide is whether Plaintiffs relied on

---

[47] *Id.* (PJI 3:20) at P. 180.

Defendants' foregoing statements.  If you decide that Plaintiffs did not rely on Defendants' statements , you need proceed no further on the claim of fraud. If you decide that Plaintiffs did rely on Defendants' statement(s),  you must next decide whether Plaintiffs  were justified in relying on the statement(s).

Whether a person is justified in relying on a statement depends on whether a reasonable person would so rely without further effort to determine the truth or accuracy of the statement. If you decide that Plaintiffs were  not justified in relying on Plaintiffs' statement, you need proceed no further on the claim of fraud. If you decide that Plaintiffs were justified in relying on the statement9s), you must next decide whether Plaintiffs sustained damages because they  relied on Defendants' statement(s).

If you decide that Plaintiffs did not sustain any damage  as a result of the fraud, you will find for Defendants on the claim of fraud. If you decide that Plaintiffs did sustain damage as a result of the fraud, you must next decide the actual monetary loss sustained. In determining the amount of damages Plaintiffs sustained, you should consider only the actual amounts that Plaintiffs spent e in reliance on Defendants' false statement(s)  You should not consider any lost profits or other amounts that Plaintiffs may have expected to, but did not, receive because Defendants' statement was false.

## CONVERSION or WRONGFUL TAKING[48]

## Conversion of Money

A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else,

---

[48] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI 3:10 P. 120; available at: https://archive.org/download/newyorkpatternju02unse_1/newyorkpatternju02unse_1.pdf (hereinafter "PJI").

interfering with that person's right of possession.[49]

## Elements of Conversion

The key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it in derogation of plaintiffs rights.[50]

## Conversion: Fourth Cause of Action

Dr. Douglas Schottenstein alleges that the two defendants, his former employees at Schottenstein Pain & Neuro, PLLC d/b/a NY Spine Medicine (the "Medical Practice"), took his money through fraud by wiring money out of his bank accounts, manually and digitally removing Plaintiffs' funds on deposit, and charging his credit cards, among other things. The Defendants, DEREK LEE and PEARL CHAN (hereinafter "Defendants"), claim they were entitled to appropriate millions of dollars as administrative staff.

In order to state a cause of action, plaintiffs must establish legal ownership of a specific identifiable piece of property and the defendants' exercise over or interference with the property in defiance of Plaintiffs' rights.[51] Conversion has been defined as any unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. *Id.*

---

[49] *Id.* at P. 121 (citing *Colavito v New York Organ Donor Network, Inc*., 8 NY3d 43, 827 NYS2d 96, 860 NE2d 713 (2006); *Cretaro v Huntington*, 203 AD3d 1696, 166 NYS3d 80 (4th Dep't. 2022); *Halvatzis v Perrone*, 199 AD3d 785, 156 NYS3d 428 (2d Dep't. 2021); *Reif v Nagy,* 175 AD3d 107, 106 NYS3d 5 (1st Dep't. 2019)).

[50] *Id.* at P. 122 (citing *Colavito v New York Organ Donor Network, Inc*., 8 NY3d 43, 827 NYS2d 96, 860 NE2d 713 (2006); *Cretaro v Huntington*, 203 AD3d 1696, 166 NYS3d 80 (4th Dep't. 2022); *Halvatzis v Perrone*, 199 AD3d 785, 156 NYS3d 428 (2d Dep't. 2021); *Reif v Nagy,* 175 AD3d 107, 106 NYS3d 5 (1st Dep't. 2019)*; Petrone v Davidoff Hutcher & Citron, LLP*, 150 AD3d 776, 54 NYS3d 25 (2d Dep't. 2017); see *Employers' Fire Ins. Co. v Cotten*, 245 NY 102, 156 NE 629 (1927); *Alpha/Omega Concrete Corp. v Ovation Risk Planners, Inc*., 197 AD3d 1274, 154 NYS38d 113 (2d Dep't. 2021); see also *Meese v Miller*, 79 AD2d 237, 486 NYS2d 496 (4th Dep't. 1981) (citing PJI)).

[51] *Id* (additional citations omitted).

**TORTIOUS INTERFERENCE WITH A CONTRACT**[52]

As you have heard, the plaintiff makes the following six claims: (1) that (he, she, it) had a contract with Citibank and its agent Cenlar to timely make payments under the mortgage held by Citibank, (2) that the defendants knew about the contract, (3) that defendants intentionally caused plaintiff to breach the contract by defendants' withholding and diverting monthly mortgage payments, (4) that plaintiff did, in fact, breach the contract by not making timely mortgage payments, (5) that plaintiff would. not have breached the contract if it had not been for Defendants' conduct and (6) that plaintiffs sustained damages as a result of the breach.

Defendants fail to deny (1) that plaintiff had a mortgage contract with Citibank, (2) that Defendants CD knew about the contract, (3) that Defendants intentionally caused plaintiff to breach the contract, (4) that plaintiff, in fact, breached the contract, (5) that plaintiff would not have breached the contract had it not been for Defendants' conduct, and (6) that plaintiff sustained damages as a result of thes breach of contract caused by Defendants.

For plaintiff to recover, plaintiff must prove that (he, she, it) had a contract with Citibank and/or its agent Cenlar and that Defendants knew about that contract. To prove that Defendants knew about the contract between Plaintiff and Citibank or its agent Cenlar, it is not necessary that Defendants had knowledge of the contract's specific terms. Plaintiff must also prove that Defendants intentionally caused Plaintiff to breach the contract. An act is intentional if it is done deliberately and for the purpose of inducing a party to a contract to breach it. Plaintiff must also prove that the contract

---

[52] See also, Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:56. (2022), P. 606-609.

was, in fact, breached, and that plaintiff would not have breached had it not been for

Defendants' conduct. A contract is breached when one of the parties fails to do what (he,

she, it) promised to do under the contract. An act induces a breach if it causes a party

who otherwise would have complied with the contract not to do so. Additionally,

plaintiff must prove that (he, she, it) sustained damages as a result of the breach. A

(person, corporation, entity) is not justified in inducing a breach of contract if the

(person's, corporation's, entity's) sole purpose is to gain profit for (himself, herself,

itself), or to cause harm to a contracting party.

## Elements of Tortious Interference with a Contract[53]

The elements of the tort of interference with contract are the existence of a valid

contract between the plaintiff and a third party, defendant' 'knowledge of that contract,

defendants' intentional procurement of the breach of the contract without justification,

actual breach of the contract, and plaintiffs damages resulting from the breach.[54]

## Tortious Interference: Fifth Cause of Action

Based on these actions as supported by the tracing of bank documents for

---

[53] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:56. (2022), P. 610-611,

[54] *Id.* (citing *Oddo Asset Management v Barclays Bank PLC*, 19 NY3d 584, 950 NYS2d 325, 973 NE2d 735 (2012); *White Plains Coat & Apron Co., Inc. v Cintas Corp.*, 8 NY3d 422, 835 NYS2d 530, 867 NE2d 381 (2007) (citing PJI); *Lama Holding Co. v Smith Barney Inc.*, 88 NY2d 413, 646 NYS2d 76, 668 NE2d 1370 (1996); *NBT Bancorp Inc. v Fleet/Norstar Financial Group, Inc.*, 87 NY2d 614, 641 NYS2d 581, 664 NE2d 492 (1996); *Foster v Churchill*, 87 NY2d 744, 642 NYS2d 583, 665 NE2d 153 (1996); *Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 595 NYS2d 931, 612 NE2d 289 (1993); *MUFG Union Bank, N.A. v Axos Bank*, 196 AD3d 442, 152 NYS3d 114 (1st Dep't. 2021); *Stuart's, LLC v Edelman*, 196 AD3d 711, 152 NYS3d 472 (2nd Dep't. 2021); *Nostalgic Partners, LLC v New York Yankees Partnership*, 205 AD3d 426, 168 NYS3d 444 (1st Dep't. 2022); *Barry's Auto Body of NY, LLC v Allstate Fire & Casualty Insurance Company*, 190 AD3d 807, 140 NYS3d 246 (2nd Dep't. 2021); *Shear Enterprises, LLC v Cohen*, 189 AD3d 423, 1837 NYS3d 306 (1st Dep't. 2020); *Oxford Health Plans (N.Y.), Inc. v Biomed Pharmaceuticals, Inc.*, 181 AD3d 808, 122 NYS3d 47 (2nd Dep't. 2020); *Gutierrez v McGrath Management Services, Inc.*, 152 AD3d 498, 59 NYS3d 52 (2d Dep't. 2017); *Kickertz v New York University*, 110 AD3d 268, 971 NYS2d 271 (1st Dep't. 2013); *American Preferred Prescription, Inc. v Health Management, Inc.*, 252 AD2d 414, 678 NYS2d 1 (1st Dep't. 1998); *Andrew Greenberg Inc. v Sir-Tech Software Inc.*, 245 AD2d 1004, 667 NYS2d 83 (3d Dep't. 1997) (citing PJI).

the unauthorized wires, forged check, withdrawals and credit card charges,

constituting the continued taking of unauthorized funds as employees, conducted

by Defendants Chan and Lee, these defendants have breached their duty of loyalty

and trust as employees and have further exhibited misconduct and unfaithfulness

in their employee service culminating in the tortious interference of contractual

rights by Plaintiffs.

Specifically, Plaintiffs submit that Dr. Schottenstein had a valid contract for

the mortgage on his townhouse residence.[55] Defendants Lee and Chan knew Dr.

Schottenstein had a mortgage on his residence.[56] Defendants Lee and Chan

conspired to interfere with that contract by diverting Dr. Schottenstein's mortgage

payments causing Dr. Schottenstein to breach his mortgage agreement.[57] Lastly, as

a result of Dr. Schottenstein's breach, he has had to pay additional funds to remove

his town house from foreclosure.[58]

## **BATTERY[59]**

Battery is an intentional tort. Intent involves the state of mind with which an act

is done. If a person acts voluntarily with a desire to bring about a result, (he, she) is said

to have intended that result. Further, although (he, she) has no desire to bring about the

result, if (he, she) does the act knowing, with substantial certainty, that the result will

follow, (he, she) is also said to have intended that result.[60]

---

[55] Comp. ¶ 140.
[56] Comp. ¶ 141.
[57] Comp. ¶ 142.
[58] Comp. ¶ 143.
[59] See also, Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:1 (2022), P. 1-4.
[60] *Id.* (intent); see also *id.* at P. 2 ("Intent is usually proved by circumstantial evidence," citing *Staples v Sisson*, 274 AD2d 779, 711 NYS2d 550 (3rd Dep't. 2000) (citing PJI), "although, of course, defendant's direct testimony concerning his or her intent is competent," citing *Noonan v Luther*, 206 NY 105, 99 NE 178 (1912), "as are

In this action, plaintiff seeks damages for battery. [61] A person who intentionally touches another person, without that person's consent, and causes an offensive bodily contact commits a battery and is liable for all damages resulting from (his, her) act.

Intent involves the state of mind with which an act is done. The intent required for battery is intent to cause a bodily contact that a reasonable person would find offensive. An offensive bodily contact is one that is done for the purpose of harming another or one that offends a reasonable sense of personal dignity, or one that is otherwise wrongful. Plaintiff claims that defendants caused Dr. Schottenstein toingest ethylene glycol, the active ingredient in antifreeze, which resulted in severe injury to Dr. Schottenstein including the shutdown of his kidney function causing him to require hospitalization to obtain acute care and dialysis Defendants deny that they caused Dr. Schottenstein to ingest ethylene glycol, but an open and partially consumed container of antifreeze was found in the Medical Office that Defendants managed where there was no need for same, and several months later, Defendants were in physical contact with Dr. Schottenstein's dog at the residence, who immediately became severely ill following the contact with Defendants, and was found to have ingested a known controlled substance that Dr. Schottenstein does not use, which caused the dog to have renal failure and permanent kidney damage.

---

defendant's own out-of-court statements.").

[61] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:3. (2022), P. 10 (citing *Wende C. v United Methodist Church*, 4 NY3d 293, 794 NYS2d 282, 827 NE2d 265 (2005) (citing PJI); *Masters v Becker*, 22 AD2d 118, 254 NYS2d 633 (2nd Dep't. 1964); *Clayton v Keeler*, 18 Misc 488, 42 NYS 1051 (Sup. 1896); see *Schloendorff v Society of New York Hospital*, 211 NY 125, 105 NE 92 (1914) (overruled by *Bing v Thunig*, 2 NY2d 656, 163 NYS2d 3, 143 NE2d 3 (1957)); *Noonan v Luther*, 206 NY 105, 99 NE 178 (1912); and see generally Prosser & Keeton, Torts (5th Ed) 39, § 9; 1 Harper & James, *The Law of Torts*, 211, §§ 3.1-3.3; Restatement, Second, Torts §§ 13-20; 6A NYJur2d, Assault—Civil Aspects § 4).

If you find that Defendants intentionally caused Dr. Schottenstein to ingest ethylene glycol and that contact was offensive, you will find that Defendants committed a battery.

## Elements of Battery[62]

In order to make out a prima facie claim of battery, a plaintiff must establish that there was a bodily contact, that the contact was harmful or offensive, and that the defendant intended to make the contact without the plaintiff's consent.[63]

## Battery: Sixth Cause of Action

Dr. Schottenstein alleges that Defendant Chan contaminated Dr. Schottenstein's food or drink with antifreeze with the intent to kill or cause severe bodily harm to him.[64] As a result of Chan's action[65], Dr. Schottenstein ingested the poisoned food or drink and became seriously ill with kidney failure requiring dialysis and a two week stay in the hospital.[66]

Here it is disputed by Defendants [67] that they caused Dr. Schottenstein to

---

[62] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:3. (2022), P. 12.

[63] *Id.* (citing *Rivera v State*, 34 NY3d 3838, 119 NYS3d 749, 142 NE3d 641 (2019) (citing PJI); *Wende C. v United Methodist Church*, 4 NY3d 293, 794 NYS2d 282, 827 NE2d 265 (2005) (citing PJI); *Gutierrez v McGrath Management Services, Inc.*, 152 AD3d 498, 59 NYS3d 52 (2ⁿᵈ Dep't. 2017); *Laurie Marie M. v Jeffrey T.M.*, 159 AD2d 52, 559 NYS2d 336 (2ⁿᵈ Dep't. 1990), *affd*, 77 NY2d 981, 571 NYS2d 907, 575 NE2d 393 (1991); *Cerilli v Kezis*, 16 AD3d 363, 790 NYS2d 714 (2ⁿᵈ Dep't. 2005); *Bastein v Sotto*, 299 AD2d 432, 749 NYS2d 538 (2ⁿᵈ Dep't. 2002); *Johnson v Suffolk County Police Dept.*, 245 AD2d 340, 665 NYS2d 440 (2ⁿᵈ Dep't. 1997); *Masters v Becker*, 22 AD2d 118, 254 NYS2d 633 (2ⁿᵈ Dep't. 1964)).

[64] Comp. ¶ 146.

[65] Comp. ¶ 147.

[66] *Id.* at ¶ 148

[67] "Direct contact is not required. It is sufficient that defendant set in motion the force that causes the contact." (Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:3. (2022), P. 14 (citing *De Santis v Luger*, 257 NY 476, 178 NE 763 (1931) (closing a door with sudden violence with the design of striking plaintiff who was injured trying to ward off the blow); see *Brown v Yaspan*, 256 App Div 991, 10 NYS2d 502 (2ⁿᵈ Dep't. 1939) (placing a fan so that it blew on plaintiffs neck causing her to become sick)). "Likewise, contact with something connected with plaintiff suffices" *Id.* (citing *Brodsky v Rieser*, 195 App Div 557, 186 NYS 841 (1ˢᵗ Dep't. 1921) (starting an automobile of which plaintiff had hold); *Bull v Colton*, 22 Barb 94 (NY Gen Term 1856) (whipping a horse while plaintiff was in the wagon to which the horse was harnessed) (dictum); *Geraty v Stern*, 30 Hun 426 (NY Gen Term 1883) (removing

ingest ethylene glycol or antifreeze.

If you find that the defendant acted with the desire to bring about that result, or that the defendant knew with substantial certainty that such a result would follow, you will find that the defendant intended the result. If you find that the defendant did not desire to bring about that result and that defendant did not know with substantial certainty that such a result would follow, you will find that the defendant did not intend the result.

## CONSPIRACY TO COMMIT FRAUD[68]

Since there is no cause of action in New York for the substantive tort of conspiracy[69]...there can be no cause of action for conspiracy to breach a contract.[70] However, allegations of conspiracy are permitted when they serve to connect a defendant to an otherwise actionable tort.[71]  "[B]ecause a conspiracy by its very nature is a secretive operation, it is a rare case where all aspects of a conspiracy can be laid bare in court."[72]

---

cloak from plaintiffs shoulders)).

[68] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:56. (2022), P. 617-618.

[69] *Id.* (citing *Errant Gene Therapeutics, LLC v Sloan-Kettering Institute for Cancer Research*, 174 AD3d 473, 106 NYS3d 302 (1st Dep't. 2019)).

[70] *Id.* (citing *North Shore Bottling Co. v C. Schmidt & Sons, Inc.*, 22 NY2d 171, 292 NYS2d 86, 239 NE2d 189 (1968); *Smith v Fitzsimmons*, 180 AD2d 177, 584 NYS2d 692 (4th Dep't. 1992); *Associated Coal Sales Corp. v Hughes*, 64 AD2d 562, 406 NYS2d 827 (1st Dep't. 1978); see *MBF Clearing Corp. v Shine*, 212 AD2d 478, 623 NYS2d 204 (1st Dep't. 1995) (contracting party does not have cause of action against other contracting party for conspiring to breach contract or for inducing breach); *Rennert Diana & Co., Inc. v Kin Chevrolet, Inc*., 187 AD2d 589, 524 NYS2d 481 (2nd Dep't. 1988) (same); *Cuker Industries, Inc. v William L. Crow Const. Co*., 6 AD2d 415, 178 NYS2d 777 (1st Dep't. 1958) (same)).

[71] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:56. (2022), P. 618 (citing *North Shore Bottling Co. v C. Schmidt & Sons*, supra; *Hoag v Chancellor, Inc*., 246 AD2d 224, 677 NYS2d 531 (1st Dep't. 1998)).

[72]  *United States v. Blakstad*, No. 19 Cr. 486 (ER) (S.D.N.Y. Nov. 9, 2021) (quoting *United States v. Rojas,* 617 F.3d 669, 674 (2d Cir. 2010)).

## Elements of Conspiracy[73]

"Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort. . . ."[74]  Thus, "plaintiff may plead the existence of a conspiracy . . . to demonstrate that each defendant's conduct was part of a common scheme."[75]

"To establish a claim of civil conspiracy, plaintiff must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."[76]

## Conspiracy to commit Fraud: Seventh Cause of Action

Plaintiffs assert that Lee and Chan conspired together to engage in the fraud described above by taking the foregoing actions and using a sock puppet lawyer and sock puppet accountant to fool Dr. Schottenstein into believing his townhouse was not in foreclosure.[77] Upon information and belief, Lee and Chan engaged in this conspiracy to commit fraud for the purpose of hiding their theft of not less than $3.634 million.[78]

## CONSPIRACY TO COMMIT A TORT

[SEE/REFERENCE CONSPIRACY ABOVE]

---

[73] *See Fisk* v. *Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (discussing elements of civil conspiracy)
[74] *Alexander & Alexander Inc. v. Fritzen,* 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547, 503 N.E.2d 102 (1986) (internal quotations and citations omitted)
[75] *World Wrestling Federation Entertainment, Inc. v. Bozell,* 142 F.Supp.2d 514, 532-533 (S.D.N.Y.2001) (citation omitted)
[76] *Id.* see *Fisk* v. *Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (citing *Treppel v. Biovail Corp.,* No. 03 Civ. 3002, 2004 WL 2339759, at *19 (S.D.N.Y. Oct. 15, 2004)).
[77] Comp. ¶ 150.
[78] Comp. ¶ 151.

**Elements of Conspiracy**[79]

[SEE/REFERENCE ELEMENTS OF CONSPIRACY ABOVE]

**Conspiracy to commit a Tort: Eighth Cause of Action**

Plaintiffs assert that upon information and belief, Lee and Chan conspired to engage in a scheme to steal not less than $3.634 million dollars from Dr. Schottenstein.[80] In furtherance of that scheme Lee and Chan conspired to hide their theft from Dr. Schottenstein by inventing a sock puppet lawyer and accountant to deceive Dr. Schottenstein into believing his townhouse was not going into foreclosure so that he would not notice the significant drawdowns in the Thompson Account.[81] Defendants Lee and Chan conspired to take control of the Medical Practice's AMEX charges resulting in unauthorized expenditures totaling in excess of $600,000 for which Dr. Schottenstein is liable.[82] Plaintiffs allege that Lee and Chan conspired to impersonate Dr. Schottenstein during calls with Citibank representatives in order to authorize fraudulent wire transfers.[83] Finally, upon information and belief, Lee and Chan conspired to kill or cause severe bodily harm to Dr. Schottenstein to conceal their theft.[84]

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**[85]

One who (intentionally and for the purpose of causing severe emotional distress, recklessly) conducts (himself, herself) toward another person in a manner so shocking

---

[79] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:56. (2022), P. 610-611.
[80] Comp. ¶ 154.
[81] Comp. ¶ 155.
[82] Comp. ¶ 156.
[83] Comp. ¶ 157.
[84] Comp. ¶ 158.
[85] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:6. (2022), P. 60-61.

and outrageous that it exceeds all reasonable bounds of decency is liable to such person for any resulting severe emotional distress.

Intent involves the state of mind with which an act is done. If a person acts voluntarily with a desire to bring about a result, (he, she) is said to have intended that result. Further, although (he, she) has no desire to bring about the result, if (he, she) does the act knowing, with substantial certainty, that the result will follow, (he, she) is also said to have intended that result. An act is reckless when it is done in such a manner and under such circumstances as to show utter disregard of the consequences that may follow.) Emotional distress is severe when it is of such intensity and duration that no reasonable person should be expected to endure it.

If you find, first, that defendant's conduct toward plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency as measured by what the average member of the community would tolerate and, second, that defendant's conduct caused severe emotional distress to plaintiff and, third, that defendant acted  with the desire to cause such distress to plaintiff; under circumstances known to defendant which made it substantially certain that such result would follow; recklessly and with utter disregard of the consequences that might follow) your finding on this issue will be for plaintiff. If, on the other hand, you find, first, that defendant's conduct was not so outrageous and shocking as to exceed all reasonable bounds of decency as measured by what the average member of the community would tolerate or, second, that  defendant's conduct did not cause severe emotional distress to plaintiff or, third, that although defendant's conduct was outrageous and shocking and did cause severe emotional distress to plaintiff, defendant did not act  with the desire to cause such distress to plaintiff; nor under circumstances known to defendant which made it substantially

certain that that result would follow; recklessly and with utter disregard of the consequences that might follow) your finding on this issue will be for the defendant.[86]

## Elements of Intentional Infliction of Emotional Distress[87]

The tort of intentional infliction of emotional distress requires the following four elements: extreme and outrageous conduct; intent to cause or disregard of a substantial probability of causing severe emotional distress; a causal connection between the conduct and injury; and severe emotional distress.[88]

## Intentional Infliction of Emotional Distress: Ninth Cause of Action

Lee and Chan's conduct in stealing not less than $748,848 from the Thompson Account and not less than $600,000 in unauthorized AMEX charges, diverting the mortgage payments causing Dr. Schottenstein's residence to fall into foreclosure, creating a fake billing company, deceiving Dr. Schottenstein about the status of his mortgage and the state of his financial situation, and poisoning both Dr. Schottenstein and his dog constitutes extreme and outrageous conduct.[89] Defendants engaged in this conduct either with the intent to or in disregard of the

---

[86] *Id.* (citing *Chanko v American Broadcasting Companies Inc.*, 27 NY3d 46, 29 NYS3d 879, 49 NE3d 1171 (2016); *Fischer v Maloney*, 43 NY2d 553, 402 NYS2d 991, 373 NE2d 1215 (1978); *Clark v New York Telephone Co.*, 52 AD2d 1030, 384 NYS2d 562 (4th Dept 1976), *aff'd*, 41 NY2d 1069, 396 NYS2d 177, 364 NE2d 841 (1977) (citing PJI); *Nestlerode v Federal Ins. Co.*, 66 AD2d 504, 414 NYS2d 398 (4th Dep't. 1979) (citing PJI); *Murphy v Murphy*, 109 AD2d 965, 486 NYS2d 457 (2nd Dep't. 1985); *Long v Beneficial Finance Co. of New York*, 39 AD2d 11, 330 NYS2d 664 (4th Dep't. 1972); *Halio v Lurie*, 15 AD2d 62, 222 NYS2d 759 (2nd Dep't. 1961); *Mitran v Williamson*, 21 Misc2d 106, 197 NYS2d 689 (Sup 1960); see *Murphy v American Home Products Corp.*, 58 NY2d 293, 461 NYS2d 232, 448 NE2d 86 (1983); *Nader v General Motors Corp.*, 25 NY2d 560, 307 NYS2d 647, 255 NE2d 765 (1970); *Roach v Stern*, 252 AD2d 488, 675 NYS2d 133 (2nd Dep't. 1998); *Cohen v Varig Airlines* (S.A. Empresa de Viacao Aerea Rio Grandense), 62 AD2d 324, 405 NYS2d 44 (1st Dep't. 1978); *Prosser & Keeton*, Torts (5th ed) 54, § 12; 1 *Harper & James, The Law of Torts 665*, §§ 9.1, 9.2; Restatement, Torts 2d § 46; Annot: 38 ALR4th 998 and 15 ALR2d 108 (abusive language)).

[87] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:6. (2022), P. 63.

[88] *Id.* (citing *Chanko v American Broadcasting Companies Inc.*, 27 NY3d 46, 29 NYS3d 879, 49 NE38d 1171 (2016); *Howell v New York Post Co., Inc.*, 81 NY2d 115, 596 NYS2d 350, 612 NE2d 699 (1993); *Leff v Our Lady of Mercy Academy*, 150 AD3d 1239, 55 NYS38d 392 (2nd Dep't. 2017)).

[89] Comp. ¶ 161.

substantial possibility of causing Dr. Schottenstein emotional distress.[90] Plaintiffs submit that Dr. Schottenstein has endured emotional distress as a direct result of Chan and Lee's actions.[91]

## Faithless Employee[92]

Plaintiffs allege that Faithless Employee Damages arising from compensation paid to Chan and Lee during the period of their embezzlement from years 2017 through June 30, 2019 (Lee) and September 20, 2020 (Chan) are calculated to be at least $1,255,499.[93]

## Elements of Faithless Employee Claim[94]

New York's common-law faithless servant doctrine provides that an agent or employee that breaches its fiduciary duty of loyalty to its principal/employer forfeits its right to compensation for the period of its disloyalty.[95]

An agent is obligated "to be loyal to his employer and is 'prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.' "[96]

"One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation,

---

[90] Comp. ¶ 162.

[91] Comp. ¶ 163.

[92] See also, Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:56. (2022), P. 606-609.

[93] See Docket Entries 84-2, 9 and 10: Economic Damages Report at p. 17 and Report Exhibit 8 and Appendices N and O.

[94] Committee on Pattern Jury Instructions Association of Justice of the Supreme Court of the State of New York, *Pattern Jury Instructions*, NY PJI - Third Edition, PJI 3:56. (2022), P. 610-611,

[95] *Supreme Showroom, Inc. v. Branded Apparel Group, LLC*, 2018 U.S. Dist. LEXIS 107902*; 2018 WL 3148357 (S.D.N.Y. 2018).

[96] *Western Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977) (quoting *Lamdin v. Broadway Surface Adver. Corp.*, 272 N.Y. 133, 138, 5 N.E.2d 66 (1936)).

whether commissions or salary."[97]  Moreover, a "principal is entitled to recover from his unfaithful agent any commission paid by the principal."[98]  It does not "make any difference that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent."[99]

## Faithless Employee: Tenth Cause of Action

Faithless Employee Damages arising from compensation paid to Chan and Lee during the period of their embezzlement from years 2017 through June 30, 2019 (Lee) and September 20, 2020 (Chan) are calculated through December 31, 2020 are at least $3,634,285 for such cause of action and are summarized as follows:

1.  Unauthorized Wire Transfers .............................................. $748,798

2.  American Express Charges Without Business Purpose .........$600,455

3.  Unauthorized Cash Withdrawals by Chan ............................$528,283

4.  Unauthorized Chase QuickPay and Zelle Transfers ............... $206,231

5.  Post-Termination Payroll Costs for Lee ................................. $177,018

6.  Forged Check Drawn From Iberia Account ............................ $118,000

7.  Faithless Employee Damages ................................................ $1,255,499

     TOTAL ................................................................. $3,634,285

---

[97] *Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977) (citing *Restatement (Second) of Agency* (1958), § 469)
[98] *Wechsler v. Bowman*, 285 N.Y. 284, 292, 34 N.E.2d 322 (1941); *see also Maritime Fish Prods., Inc. v. World-Wide Fish Prods., Inc.*, 100 A.D.2d 81, 474 N.Y.S.2d 281, 287 (1st Dep't 1984) (employer is entitled to the return of compensation paid employee during period of disloyalty)
[99] *Feiger*, 41 N.Y.2d at 928-29; *see, also, Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003).

[D.E. 83-2: Balla, Economic Damages Report at p.17.].

Defendants Chan and Lee converted Plaintiffs' assets in seven (7) categories of Plaintiffs' property: (1) the unauthorized wires that transferred $748,798 out of the Thompson Account and into their own respective accounts, (2) the unauthorized American Express card charges totaling in excess of $600,000 for abusive, lavish and outlandish expenditures having absolutely nothing to do with the business purposes for which the cards were provided, (3) the unauthorized manual cash withdrawals from the Medical Practice Account exceeding $528,000, (4) the electronic cash withdrawals from the Medical Practice Account via Chase QuickPay and QuickPay with Zelle that exceeded $206,000, (5) post-termination payroll costs for Lee resulting from wrongly failing to delete him from the system thereby depriving the Medical Practice of over $177,000 in unnecessary costs, (6) defendants' forgery and absconding with a $118,000 check made out to Dr. Schottenstein that cleared the Iberia Bank Account without the proceeds being deposited into any account owned or controlled by Plaintiffs, and (7) over $1.255 million in unearned salary and bonuses collected by defendants while they targeted and continued to target the theft of Plaintiffs' assets through bank fraud, wire fraud, identity theft, credit card fraud and manual and electronic withdrawals.

In or about December, 2020, Chan installed Refog and Remote PC on Dr. Schottenstein's computer without his permission or knowledge. Refog enabled Chan to log onto the computer remotely while Refog enabled her to recapture and monitor the keystrokes entered by Dr. Schottenstein.

Plaintiffs assert that the conduct of Defendants during the nearly four-year

33

period in which they engaged in the aforesaid seven (7) categories of misconduct and disloyalty not only speaks for itself, but most definitely satisfies the misconduct, breach of loyalty and faithlessness standard required to implement the faithless servant doctrine.

## CREDIBILITY[100]

I am sure that it is clear to you by now that you are being called upon to resolve various factual issues, in the face of different and irreconcilable pictures painted by the plaintiff and the defendants. You will now have to decide whether or not the plaintiff has proven that the defendants are liable by a preponderance of the evidence. An important part of the decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In making those judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you to decide the truth and the importance of each witness' testimony.

Let me first give you some general guidance on how to evaluate testimony. After that, I will discuss some additional issues raised by the witnesses who have testified in this case. There is no magic formula for evaluating testimony. You bring to this courtroom all of the experience and background of your lives in your everyday affairs. You determine for yourself every day and in a multitude of circumstances the reliability of statements that are made to you by others. The same tests that you use in your everyday matters of importance are the test you use in your deliberations.

---

[100] The instruction in paragraphs were formed, with modifications, from Michael Avery, David Rudovsky and Karen Blum, Police Misconduct Law and Litigation, Section 12:8-9 (3rd ed, 2012-2013); John Boston, Daniel E. Manville, Prisoners' Self-Help Litigation Manual, App. 12c "All Persons Equal Before the Law" (3rd ed. 1995).

Your decision whether or not to believe a witness may depend on your impressions of that witness. Was the witness candid, frank and forthright? Did the witness seem as if he or she was hiding something, being evasive or suspect in some way? How did the way in which the witness testified on direct examination compare with the way in which he or she testified on cross-examination? Was the witness' testimony consistent or self-contradictory? Did the witness appear to know what he or she was talking about and did the witness strike you as someone who was trying to report his or her knowledge accurately?

How much you choose to believe a witness may be influenced by the witness' bias. Does the witness have a relationship with either of the parties that may affect how he or she testified? Does the witness have an interest in the outcome of this case, some incentive, loyalty or motive that might cause him or her to shade the truth? Or does the witness have some bias, prejudice or hostility that may have caused the witness – consciously or not – to give you something other than a completely accurate account of the facts he or she testified about? You may consider such questions when deciding what weight you will give to a witness' testimony.

If a witness has an interest in the outcome, he or she is not necessarily incapable of giving truthful testimony. It is for you to decide to what extent, if at all, the witness' interest has affected or colored his or her testimony. But evidence that one witness is biased, prejudiced or hostile with respect to someone else requires you to view that witness' testimony with caution, to weigh the evidence with care, and subject it to careful consideration. Again, only the jury can decide how to weigh testimony.

You also should consider the witness' ability to express him or herself. Ask yourselves whether the witness' recollection of the facts stands up in light of all the

other evidence in the case. If you find that any witness has willfully testified falsely as to any material fact you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely or inaccurately about one matter, you may reject as false or inaccurate that portion of his or her testimony and accept as true any other portion of his or her testimony that recommends itself to your belief or which you may find corroborated by other evidence in the case.

You have heard evidence of discrepancies in the testimony of certain witnesses. Such evidence may be a basis to disbelieve a witness' testimony. On the other hand, discrepancies in a witness' testimony or between his or her testimony and that of others do not necessarily mean that the witness' entire testimony should be discredited.

People sometimes forget things, and even truthful witnesses may be nervous and contradict themselves. Also, two people witnessing an event will often see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

You have also heard both parties read prior statements from pre-trial deposition testimony read into the record or shown to a witness on the stand in an attempt to show inconsistencies in testimony. Deposition testimony used as a prior inconsistent statement to impeach the witness – that is, to challenge his or her credibility or the truth of the testimony being given on the witness stand at trial – is not to be considered by you as affirmative evidence in determining the ultimate question of the trial. Evidence of a prior inconsistent statement was placed before you

36

for the more limited purpose of helping you decide whether and how much to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In essence, what you must try to do in deciding credibility is to size a person up in light of his or her demeanor, the explanations given, and all the other evidence in the case, just as you would in any important matter where you are trying to decide if a person is truthful, straightforward and accurate in his or her recollection. In deciding the question of credibility, remember that you should use your common sense, your good judgment, and your experience.

## CLOSING INSTRUCTIONS

I have now outlined for you the rules of law applicable to this case, the process by which you weigh the evidence and determine the facts, and the legal elements which must be proved by a preponderance of the evidence. In a few minutes you will retire to the jury room for your deliberations. I will now give you some general rules regarding your deliberations.

Keep in mind that nothing I have said in these instructions is intended to suggest to you in any way what I think your verdict should be. That is entirely for you to decide.

By way of reminder, I charge you once again that it is your responsibility to judge the facts in this case from the evidence presented during the trial and to apply the law as I have given it to you. Remember also that your verdict must be based solely on the evidence in the case and the law as I have given it to you, not on anything else.

## A. FOREPERSON

In order for your deliberations to proceed in an orderly fashion, you must have a foreperson.

The custom in this courthouse is for Juror No. 1 to act as the foreperson. However, if, when you begin deliberations, you decide that you want to elect another foreperson, you are entitled to do so. The foreperson will be responsible for signing all communications to the Court and for handing them to the marshal during your deliberations, but, of course, his or her vote is entitled to no greater weight than that of any other juror.

## B. COMMUNICATION WITH THE COURT

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case. There is only one exception to this rule.

If it becomes necessary during your deliberations to communicate with me, you may send a note, through the marshal, signed by your foreperson. No member of the jury should attempt to communicate with me except by a signed writing, and I will never communicate with any member of the jury on any subject touching upon the merits of the case other than in writing, or orally here in open court.

## C. JUROR'S RECOLLECTION GOVERNS/READBACK

Your recollection governs. Nobody else's. If, in the course of your deliberations, your recollection of any part of the testimony should fail, or you should find yourself in doubt concerning my instructions to you on the law, you may return to the courtroom for the purpose of having such testimony or instructions read back to you. Again, you may make such a request by a note to a marshal. I suggest, however, that

you be specific to avoid hearing testimony you do not desire to assist in your deliberations. Tell me as best as you can precisely what you want to hear and be patient because it sometimes takes a while to find the testimony in the record.

If you want to see any exhibits, please send a note to me, and the requested exhibits will be sent in to you.

## D. DELIBERATIONS AND UNANIMOUS VERDICT

Your duty is to reach a fair conclusion from the law and the evidence. It is an important one. When you are in the jury room, listen to each other, and discuss the evidence and issues in the case amongst yourselves. It is the duty of each of you, as jurors, to consult with one another, and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and conscience. While you should not surrender conscientious convictions of what the truth is and of the weight and effect of the evidence, and while each of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors, you should examine the issues and the evidence before you with candor and frankness, and with proper deference to, and regard for, the opinions of your fellow jurors.

You should not hesitate to reconsider your opinions from time to time and to change them if you are convinced they are wrong. However, do not surrender an honest conviction as to the weight and effect of the evidence simply to arrive at a verdict.

The decision you reach must be unanimous; you must all agree. When you have reached a verdict, simply send me a note signed by your foreperson that you have reached a verdict. Do not indicate what the verdict is. In *no* communication with the court should you give a numerical count of where the jury stands in its deliberations.

Remember in your deliberations that the dispute between the parties is, for them, no passing matter. They and the Court rely upon you to give full deliberation and consideration to the issues and evidence before you. By so doing, you carry out to the fullest your oaths as jurors to truly try the issues of this case and render a true verdict.

I will ask you to wait for a few moments while I discuss with counsel whether there is anything further that you need to be charged.

Dated:        New York, New York
              March 1, 2024

                                              Respectfully Submitted,

                                              _____
                                              **Jeffrey A. Donner, Esq.**
                                              **Donner Law**
                                              **708 Highway 35 South**
                                              **Neptune, New Jersey 07753**
                                              **(732) 578-8530**

                                              **Richard Bruce Rosenthal, Esq.**
                                              **545 E. Jericho Turnpike**
                                              **Huntington Station, New York 11746**
                                              **(631) 629-8111**

                                              **Cory H. Morris, JD MA**
                                              **863 Islip Avenue**
                                              **Central Islip NY 11722**