| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | PLAINTIFFS' EXHIBIT 3 |

=====================================

DR. DOUGLAS SCHOTTENSTEIN, M.D.,
THOMPSON REAL ESTATE, LLC, and
SCHOTTENSTEIN PAIN AND NEURO, PLLC
D/B/A NY SPINE MEDICINE

**Docket No.:**
**22-cv-01197 (DLC)**

    *Plaintiff,*

   -against-

DEREK LEE, PEARL CHAN,
And JOHN AND JANE DOES 1-10,

    *Defendants.*

=====================================

## PLAINTIFF'S PROPOSED VOIR DIRE

*For Plaintiffs:*

*Jeffrey A. Donner, Esq.*
*Donner Law*
*708 Highway 35 South*
*Neptune, New Jersey 07753*
*(732) 578-8530*

*Richard Bruce Rosenthal, Esq.*
*545 E. Jericho Turnpike*
*Huntington Station, New York 11746*
*(631) 629-8111*

*Cory H. Morris, JD MA*
*863 Islip Avenue, Central Islip NY 11722*

*For Defendants:*

*Law Office of Andrew L. Hoffman, P.C.*
*Andrew L. Hoffman, Esq.*
*420 Lexington Avenue, Ste. 300*
*New York, New York 10107*
*Tel: (646) 585-2838*
*Cell: (347) 262-8052*
*Fax: (646) 585-2836*
*ahoffman@andrewhoffmanlaw.com*

Statement of the Case

In this lawsuit, Dr. Douglas Schottenstein, M.D., Thompson Real Estate, LLC., and Schottenstein Pain and Neuro, PLLC d/b/a NY Spine Medicine are suing two former employees Derek Lee ("Lee") and Pearl Chan ("Chan"), and John and Jane Does 1-10 for money damages and non-monetary relief. Defendants were at one time employed by Plaintiffs, specifically, the Medical Practice, with Chan initially serving as a medical assistant and, ultimately, as office manager, and Lee serving as a medical assistant.

In this case, Plaintiff is a person[1] and Defendants Lee and Chan are persons as defined by the RICO Statute. Under 18 U.S.C. § 1962(c) it shall be unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt." And, under 18 U.S.C. § 1962(d), it shall be unlawful to conspire to violate any of the RICO substantive provisions, including section 1962(c). The RICO statute prohibits four types of activities: (1) investing in, (2) acquiring, or (3) conducting or participating in an enterprise with income derived from a pattern of racketeering activity or collection

---

[1] See Plaintiffs' Second Amended Complaint ("Comp."), Docket Entry 131 ¶¶ 90 (citing 18 U.S.C. §§ 1961(3) and 1964(c)).

of an unlawful debt, or (4) conspiring to commit any of the first three types of activity. 18 U.S.C. § 1962(a)–(d).

Plaintiffs allege and reassert that Plaintiffs are the victims of Defendants' willful acts constituting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1962 *et seq.*, fraud, conversion, tortious interference with contract, battery, conspiracies to commit fraud and tort, and negligent or intentional infliction of emotional distress.

In late 2016, Plaintiff Douglas Schottenstein, M.D. advised Defendant Pearl Chan that she would be promoted to the position of office manager for Plaintiff Schottenstein Pain and Neuro, PLLC (the "Medical Practice") as Cara Camden, the then-current office manager, prepared to leave that position.

Sometime later, in early 2017, Plaintiffs hired Defendant Derek Lee as a medical assistant. Shortly thereafter, in 2017, Chan and Lee in concert with each other began charging their personal expenses to American Express cards on the company account for the Medical Practice without the authorization or consent of Dr. Schottenstein.

These credit cards had been provided to them for the sole purpose of performing their respective responsibilities as employees to obtain supplies for the

Medical Practice and to enable the day to day business needs of the office to be met without requiring Dr. Schottenstein to supervise every detail.

These unauthorized American Express card abuses were followed by an organized campaign implemented by Chan and Lee from mid-2017 through late 2020 to embezzle, misappropriate and steal millions of dollars from Plaintiffs by means of bank fraud, wire fraud, unauthorized withdrawals (both manual and electronic), identity theft and credit card fraud.

Moreover, although Lee was terminated by Plaintiffs in or about mid-2019, and no later than July 1, 2019, Chan left Lee on the Medical Practice payroll enabling him to continue to receive salary checks that were wholly unearned and costing the Medical Practice additional dollars in Social Security contributions and Medicare tax.

Based upon the foregoing continuing acts of Chan and Lee over the approximate three-year period at issue, and the tracing of the stolen funds into the bank accounts of Chan and Lee, these Defendants breached their duty of loyalty and trust as employees and further exhibited misconduct and unfaithfulness in their employment service to Plaintiffs. As a result, Plaintiffs further claim faithless employee damages consisting of the $1.255 million in salary and bonuses paid to these Defendants from mid-2017 through November, 2020 together with additional

bonus payments. During this period, Defendants Chan and Lee caused Plaintiffs to incur compensatory damages in excess of $3,634,285.

In late 2016, Dr. Schottenstein opened a checking account for Thompson Real Estate, LLC at Citibank (the "Thompson Account") with the intention of using this account for the sole purpose of making monthly mortgage payments for his residence. [D.E.82-2 and 3, E-Mails dated November 25 and 26, 2016 and January 11, 2017 (DS-LEE 00056-00058 and 00224-00225)]. One of Chan's responsibilities as office manager was to make the monthly mortgage payment from the Thompson Account. [D.E. 82-3, E-Mail dated January 24, 2017 (DS-LEE 00225-00225)].

Two unauthorized wire transfers totaling $748,798 were initiated and withdrawn by Defendants Chan and Lee from the Thompson Account at Citibank, and the proceeds of both were subsequently deposited into an account owned by Lee in JP Morgan Chase Bank ("Chase"). The first such withdrawal in the amount of $429,741 occurred on February 20, 2020, and the second withdrawal of $319,057 occurred on March 20, 2020. [D.E. 84-2: Balla Economic Damages Report at p. 13 and Report Exhibit 1 and Appendix H and Report Exhibit 2 and Appendix I.]. In the interim between these two wires, Lee attempted to sire to his account at Chase $319,107.63 on or about February 28, 2020, which wire failed to go through. In addition, on August 28, 2020, Lee deposited $100,000 into Dr.

Schottenstein's Account at Iberia Bank without authorization to do so. This deposit was intended to conceal Chan and Lee's wrongful activities.

The withdrawals of both wires from the Thompson Account and their subsequent deposits into Defendant Lee's Chase account on February 20, 2020 and March 20, 2020 have been traced together with subsequent transfers of these funds by Lee into two other Chase accounts that he owns. [DE 84-2, Balla, Economic Damages Report at p. 13 and Report Exhibit 1 and Appendix H and Report Exhibit 2 and Appendix I.]. In order to conceal the wire fraud in the Thompson Account, Defendants intercepted snd redirected monthly mortgage payments which as a result remained unpaid ultimately causing the residence to fall into foreclosure.

Defendants then criminally impersonated Tracy Pearson, Esq., an attorney Chan had represented to Dr. Schottenstein had been hired to assist him, to provide false written assurances that the mortgage loan account was current. Defendants Chan and Lee have formally admitted in writing that they caused and facilitated the $429,741 wire from the Thompson Account on February 20, 2020 and the $319,057 wire from the Thompson Account on March 20, 2020. [D.E. 82-9: Defendants Chan and Lee's Responses to Plaintiffs' First Set of Discovery Demands, Part I: Requests for Admissions, ## 33, 34, 35, 36, 41, and 43].

Dr. Schottenstein opened American Express cards under the Medical Practices company account for both Chan and Lee to be used by them for purposes related to the Medical Practice. Commencing in 2017, Chan and Lee used the American Express cards assigned to each of them for unauthorized personal expenses that could not be substantiated for a business purpose. During the years, 2017 through 2019, Lee's unauthorized American Express charges totaled $399,907 and Chan's unauthorized American Express charges totaled $200,547 for total unauthorized American Express charges of $600,455 during this period. [D.E.83 and 84: Balla, Economic Damages Report at p. 13, and Report Exhibits 3, 4 and Appendix J.]

During the years 2017 through 2019, Chan made numerous unauthorized cash withdrawals from the Medical Practice's Account at Chase totaling $528,283. [D.E. 84-5 and 6: Balla, Economic Damages Report at p. 14, and Report Exhibit 5 and Appendix K.]

Unauthorized transfers were made from the Medical Practice's Account at Chase to Defendants Chan and Lee's accounts via Chase QuickPay and QuickPay with Zelle during the years 2017-2019. These transfers were made without the authorization or knowledge of Dr. Schottenstein.

Defendant Chan received a total of $12,400 in these transfers during this period. Both the withdrawals from the Medical Practice's Account at Chase and the deposits into the Chan account at Bank of America ("BOA") have been traced. [D.E. 84-7 through 9: Balla, Economic Damages Report at p.14, and Report Exhibits 6, 7 and Appendices L and M.] During 2017 and 2018 Lee received a total of $193,831 in Chase QuickPay and QuickPay with Zelle unauthorized cash transfers from the Medical Practice's Account at Chase. The deposits of these funds into three separate accounts owned by Lee at Chase have been traced. D.E. 84-7 through 9: Economic Damages Report at p. 14, and Report Exhibits 6,7 and Appendices L and M].

In or about mid-2019, Defendant Derek Lee was terminated from his position at the Medical Practice. Nevertheless, without advising Dr. Schottenstein, Defendant Chan abused her position as office manager by keeping Lee (her undisclosed husband) on payroll thereby enabling him to continue to collect paychecks for unearned salary amounts until he was effectively removed from the payroll system as of November 1, 2020. After confirming the gross wages received by Defendant Lee during 2019 and 2020 and using July 1, 2019 as the termination date for Lee's employment by the Medical Practice, the prorated wage amounts for 2019 and 2020 were used to calculate the portions of Social Security and Medicare tax paid by the Medical Practice for the same period. These

calculations resulted in $97,796 of costs incurred by the Medical Practice in 2019 and $79,357 of costs incurred by the Medical Practice in 2020, or $177,153 in total, paid on behalf of Lee during the period July 1, 2019 through October 30, 2020. [D.E. 84-2 and 9: Balla, Economic Damages Report at p. 15, and Report Appendix N.

Dr. Schottenstein established an Account that he solely owns at Iberia Bank. Dr. Schottenstein has confirmed that his signature was forged on a $118,000 check that was withdrawn from the Schottenstein Iberia Account. This check was not deposited in any account owned by Dr. Schottenstein. The only persons other than Dr. Schottenstein that had access to this Iberia Account were Defendant Chan and Defendant Lee through Chan. The September 2020 bank statement for this Iberia Account documents the cancelled check and its withdrawal from this Iberia Account. Defendants Chan and Lee admit that they absconded with $118,000 by cashing this check. [D.E.84-2 and 11: Balla, Economic Damages Report at p. 16, and Report Appendix P.].

Dr. Schottenstein confirms that none of the foregoing transfers, payments and charges were authorized or consented to by him and were in each instance improperly taken by Chan and Lee.

Defendants rebut Plaintiffs statements by stating that Defendants are victims of a hostile working environment and that Defendants were entitled to all monies received by Plaintiff. Defendants further submit they were subjected to bizarre and degrading behavior for which they seek liability against Dr. Schottenstein.

The Economic Damages Report provided by Plaintiffs and the analysis and review of the documents discussed therein and attached to the Report as Exhibits and Appendices delineated above identify and confirm numerous bank transfers between the Medical Practice Account and Thompson Account and those accounts in the name of Chan and Lee, which were not for the business expenses of either the Medical Practice or Thompson Real Estate, LLC. In addition, the supporting documentation reviewed evidences the receipt of various wire transfers and payments into the bank accounts of Defendants Chan and Lee. Defendants Chan and Lee maintain that they are not liable for any wrongdoing.

<u>Witnesses</u>

Cara Camden, Office Manager at NY Spine Medicine prior to Pearl Chan assuming this responsibility.

Pearl Chan is a defendant who will be examined as to the theft and other harm caused by Ms. Chan in co-operation with Derek Lee, her common law husband.

Derek Lee will be examined as to the theft and other harm caused by Mr. Lee in cooperation with Pearl Chan, his common law wife.

Douglas Schottenstein, MD is the Plaintiff who will testify as to the responsibilities assigned to Pearl Chan and Derek Lee, their compensation, and the ways that Chan and Lee damaged him both economically and personally, regarding the loss of

funds, the foreclosure of his residence, their abuse of the AMEX Credit charges, wire fraud, battery upon him, the deliberate poisoning of his dog, impersonating an attorney and accountant that they led Dr. Schottenstein to believe was representing him on pressing legal matters and providing Dr. Schottenstein with misinformation. and other harmful acts.

Tracy Pearson, Esq. will testify that she was impersonated and the e-mails attributed to her had the wrong address. She never represented or dealt with Dr. Schottenstein directly.

Chong Lee, an Information Technology employed by Nextel, who will testify that he found malware installed on Dr. Schottenstein's computer attributed to Pearl Chan, and will further testify what that malware enabled Chan to do.

Keith Balla, CPA, etc.. Mr. Balla is a forensic accountant that will testify to explain the scope of the investigation he mad, the records he reviewed and the damages that he documented which were caused by Defendants Lee and Chan.

## Background Questions

1. What formal education have you completed?

2. What is your job history?

3. Have you or any family member or close friend ever worked for a doctor?

4. Have you or any member of your family or a close friend ever worked in a medical facility?

5. Have you ever run a business?

6. Are any of you a lawyer or have a family member or close friend who is a lawyer?

7. Do you have any hobbies that you do in your spare time?

## Bias/Impartiality/Core Beliefs

8. Do any of you know or previously heard anything about any of the lawyers or any of the parties in this case?

9.  What do you think about medical doctors generally?

10. Has anybody been a party to a lawsuit?

11. Do any of you have any bias, strong opinion or basic belief that would prevent you from fairly deciding the issues that are presented to you?

12. Did you know anyone else on the jury panel before today?

13. Is honesty an important value for a person to be guided by?

14. Should an employee be honest in his or her dealings with the employer?

15. Is stealing ever acceptable?

16. Should an employee be loyal to his or her employer?

17. Should an employee try his or her best to perform their job properly?

18. Are there cases where a large amount of money damages are justified?

19. Should an employee look out for the best interests of his or her employer?

20. Is an employee ever justified in spying on his or her employer?

21. Can an employee and his or her employer be friends?

22. Do you believe that an employer who pays his employees well is justified in relying upon them?

23. Can you wait to hear all of the facts presented before making a decision as to what occurred?

24. Are you influenced to reach decisions based upon what others may think?

25. Do you have confidence in your ability to make decisions?

26. Do you believe that you are fair in your judgments?


Dated:   March 1, 2024
         New York, New York

                                              _____/s/_____
                                              *Jeffrey A. Donner, Esq.*
                                              *Donner Law*
                                              *708 Highway 35 South*
                                              *Neptune, New Jersey 07753*
                                              *(732) 578-8530*

*Richard Bruce Rosenthal, Esq.*
*545 E. Jericho Turnpike*
*Huntington Station, New York 11746*
*(631) 629-8111*

*Cory H. Morris, JD MA*
*863 Islip Avenue, Central Islip NY 11722*